# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

| | |
|---|---|
| In re: | : |
| | :    Case No. 11-44944-RBR |
| MOISES FAIDENGOLD, | : |
| | :    Chapter 7 |
| Debtor. | : |
| | :    Adversary No. _____ |

---

| | |
|---|---|
| DIANA ESCORIHUELA, an individual, and | : |
| MARIA NANCY DE ASCENCAO | : |
| RODRIGUEZ, an individual, and | :   **ADVERSARY COMPLAINT TO** |
| FRANCISCO RODRIGUEZ, and individual | :   **CHALLENGE DISCHARGEABILITY F** |
| | :   **CERTAIN DEBTS, TO OBJECT TO** |
| Plaintiffs, | :   **EXEMPTIONS, FOR EQUITABLE LIEN** |
| | :   **OR CONSTRUCTIVE TRUST, FOR** |
| vs. | :   **PROHIBITION OF USE OF CASH** |
| | :   **COLLATERAL, FOR CONSPIRACY TO** |
| MOISES FAIDENGOLD, an individual, | :   **COMMIT FRAUD, AND OTHER** |
| MARY FAIDENGOLD, an individual, and | :   **RELIEF** |
| JAN NEIMAN, an individual | : |

---

**NOW COMES** the Plaintiffs, DIANA ESCORIHUELA ("DIANA"), MARIA NANCY DE ASCENCAO RODRIGUEZ ("NANCY"), and FRANCISCO RODRIGUEZ ("FRANCISCO"), by and through counsel, and for their Adversary Complaint against Defendant and Debtor MOISES FAIDENGOLD ("MOISES"), and Defendants MARY FAIDENGOLD ("MARY"), and JAN NEIMAN ("NEIMAN"), as follows:

**Nature of the Action**

1.    Plaintiffs DIANA, NANCY, and FRANCISCO were the few unfortunate victims who lost approximately $1,343,600.00 in the short-lived Ponzi scheme employed by Defendant MOISES.

2.    Beginning in 2007, approximately one year before the 2008 stock market crash, MOISES began soliciting funds from the Plaintiffs, in exchange for his promise to invest the funds on the Plaintiffs' behalf in safe securities and to provide the Plaintiffs with certain rates of return (i.e., 8% to 14% annually), paid monthly.

3.    Plaintiffs trusted MOISES and had confidence in his professed expertise.  In reliance on MOISES' representations, Plaintiffs delivered to MOISES over the course of approximately two years (June 2007 through October 2009) approximately $1,343,600.00 to invest on their behalf.  MOISES provided Plaintiffs with receipts for their investments, and paid to Plaintiffs monthly dividends.  When Plaintiffs demanded the return of their investments, MOISES' Ponzi scheme quickly unraveled.

4.    Plaintiffs' funds were deposited in brokerage account No. xxxxx197 at Charles Schwab & Co., Inc. ("Schwab"), held jointly in the names of MOISES and MARY (the "Brokerage Account"), except for $75,000 of DIANA's money that MOISES unabashedly deposited directly in MOISES and MARY's joint checking account at Bank of America.

5.    When the Plaintiffs demanded the return of their money, MOISES and MARY (together, the "FAIDENGOLDS") turned to Defendant, JAN NEIMAN, an asset protection attorney, to assist them in preventing the Plaintiffs from recovering the small fraction of the Plaintiffs' funds still remaining in the Brokerage Account.  NEIMAN knew or had reason to know of the FAIDENGOLDS intent to defraud, hinder or delay Plaintiffs attempts to recover

their funds; nevertheless, NEIMAN counseled and assisted the FAIDENGOLDS in creating a Florida family limited partnership (i.e., Defendant Double M. Family Limited Partnership) with the intent to prevent the Plaintiffs from recovering their money.  *See*, Transcript of NEIMAN deposition, at p. 15, line 23 through p. 17, line 8; and p. 20, line 22 through p. 23, line 7; copies of which are attached hereto as composite Exhibit A.

6.     In April 2010, the FAIDENGOLDS transferred the balance of the Brokerage Account (i.e., approximately $420,374.17) to the newly opened account of the Double M. Family Limited Partnership (the "Double M Partnership") at Schwab.

7.     In June 2007, the Brokerage Account had an opening balance of $62,222.76. Between June 2007 and October 2009, Plaintiffs delivered to MOISES approximately $1,343,600.00 to invest on their behalf.  Between June 2007 and when the FAIDENGOLDS emptied the Brokerage Account of its remaining balance of $420,374.17, the FAIDENGOLDS deposited relatively little, if any, of their own money in the Brokerage Account (total deposits during that period were approximately $1,814,881.08).  From June 2007 through April 2010, the FAIDENGOLDS withdrew from the Brokerage Account approximately $1,652,900.81.   Some of those withdraws were used to pay the dividends to the Plaintiffs and to pay-off completely a least one other Ponzi victim, Mr. Julio Perez; the rest of the Plaintiffs' money was misappropriated, converted and stolen by the FAIDENGOLDS.

8.     When MOISES failed to return DIANA's funds as promised, DIANA hired an attorney and filed the pending action <u>Diana Escorihuela v. Moises Faidengold and Mary Faidengold</u>, Case No. 10-23693 CA 27, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "Pending Lawsuit").

9.    In the eleventh-hour, MOISES filed for bankruptcy protection to avoid going to trial in the Pending Lawsuit for his wrongful, unlawful, and fraudulent acts, which trial was scheduled to commence within one month after he filed for bankruptcy protection.

10.    This Court subsequently granted to DIANA partial relief from stay in order to pursue judgment in the Pending Litigation [D.E. 46]; however, DIANA was required to file this action to preserve her rights in the bankruptcy proceedings.

11.    Plaintiffs request that this Court: (a) establish the debts owed to the Plaintiffs; (b) disallow the discharge of MOISES debts to the Plaintiffs; (c) require MOISES and MARY to provide an equitable accounting of the Plaintiffs' funds; (d) establish an equitable lien or constructive trust over all of the assets of the FAIDENGOLDS that comprise or may be traced to proceeds of Plaintiffs' funds (including without limitation as they exist in any transformed state) and to whatever has been bought with, improved, paid for, received the benefit of, or enjoyed increased value as the result of Plaintiffs' funds; (e) disallow the exemptions claimed by MOISES and/or MARY with respect to any and all assets that comprise assets subject to equitable lien or comprising the *res* of the constructive trust; (f) impose upon NEIMAN joint and several liability (with MOISES and MARY) to the Plaintiffs in the amount of the fraudulent transfer of assets from the Brokerage Account to the account of the Double M Partnership. Additionally, Plaintiffs requests that the Court issue a preliminary injunction or other equitable relief precluding Defendants from dissipating or liquidating any cash, property, or other assets currently owned or controlled by Defendants prior to the resolution of Plaintiffs' claims against Defendants for imposition of an equitable lien and constructive trust over, or the return of, those proceeds.   These measures are a proper exercise of the Court's equitable powers and are immediately necessary in order to preserve Plaintiffs' right to recover the funds diverted from

Plaintiffs in connection with MOISES' Ponzi scheme and the FAIDENGOLDS subsequent attempt to dissipate and abscond with the Plaintiffs' funds.

## The Parties

12.     Plaintiff DIANA ESCORIHUELA is a Venezuelan citizen and individual, sui juris, residing in Caracas, Venezuela.

13.     Plaintiff MARIA NANCY DE ASCENCAO RODRIGUEZ is a Venezuelan citizen and individual, sui juris, residing in Caracas, Venezuela.

14.     Plaintiff FRANCISCO RODRIGUEZ is a Venezuelan citizen and individual, sui juris, residing in Caracas, Venezuela.

15.     Defendant MOISES FAIDENGOLD is an individual, sui juris, and at all times material was a resident of Broward County, Florida.

16.     Defendant MARY FAIDENGOLD is an individual, sui juris, and is a resident of Broward County, Florida.

17.     Defendant JAN NEIMAN is an individual, sui juris, doing business in Miami-Dade County.

## Jurisdiction and Venue

18.      This is a civil proceeding arising under the Bankruptcy Code or arising in or related to a case under the Bankruptcy Code within the meaning of 28 U.S.C. 1334(b).

19.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because this action is related to the underlying bankruptcy case of Defendants which is pending before this Court.

20.     This Court also has jurisdiction over this adversary proceeding pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001(7) and 7065.

21.     This is a core proceeding under 28 U.S.C. § 157 and Bankruptcy Rule 6004 because this proceeding (a) concerns the administration of MOISES' estate; (b) includes the request to establish the amount of certain debts owed by MOISES; (c) involves the request to turn over property in which MOISES and/or MARY have, at most, legal title; (d) includes the Plaintiffs' objection to discharge of MOISES; (e) includes the Plaintiffs' objections to exemptions claimed by MOISES; (f) requests an order prohibiting Defendants from using the Plaintiffs' cash collateral; and affects the liquidation of the assets of MOISES' bankruptcy estate.

22.     Defendants' chapter 11 bankruptcy case is pending before this Court. Accordingly, venue of this adversary proceeding is proper in this Court under 28 U.S.C. 1409(a).

23.     The claims raised in this adversary proceeding arose in part from Defendants actions in Florida.

## General Allegations

24.     MOISES is not an honest debtor; rather, his insolvency was prompted by a Ponzi scheme which he was unable to keep afloat.

25.     MOISES filed his bankruptcy petition on December 23, 2011, in an attempt to avoid going to trial for fraud in the Pending Lawsuit, which was set and ready to go to trial in January 2012, and ultimately to avoid responsibility for his wrongful, unlawful, and fraudulent acts.

26.     The Pending Lawsuit was commenced by DIANA after MOISES failed to return to her the sum of $900,000.00, which DIANA had entrusted to him to invest on her behalf.

27.     DIANA entrusted her money to MOISES after MOISES represented to her that he would invest her money in safe securities and provide her with an 8% to 14% annual return, paid monthly.

28.     NANCY entrusted $343,600.00 to MOISES.

29.     NANCY entrusted her money to MOISES after MOISES represented to her that he would invest her money in safe securities, and provide NANCY with an 8% to 12% annual return, paid monthly.

30.     MOISES has failed to return NANCY's money, despite MOISES' obligation to do so.

31.     FRANCISCO entrusted at least $100,000 to MOISES.

32.     FRANCISCO entrusted the money to MOISES after MOISES represented that he would invest FRANCISCO's money in safe securities, and provide FRANCISCO with an 8% to 12% annual return, paid monthly.

33.     MOISES has failed to return FRANCISCO's money, despite MOISES' obligation to do so.

34.     The money that DIANA, NANCY, and FRANCISCO entrusted to MOISES was deposited in the Brokerage Account, except for $75,000 of DIANA's money that MOISES unabashedly deposited directly in the FAIDENGOLD's personal checking account at Bank of America.

35.     When MOISES failed to return DIANA's $900,000, DIANA hired an attorney who sent a demand letter to MOISES on or about March 9, 2010.  A copy of the demand letter attached hereto as Exhibit B.

36.     Immediately after receiving the demand letter from DIANA's attorney, the FAIDENGOLDS, with the help of an asset protection attorney (NEIMAN), tried to shield Plaintiffs' funds from collection by forming the Double M Partnership.  *See*, Transcript of

MARY's deposition, at p. 55, line 3 through p. 58, line 1, a copy of which is attached hereto as Exhibit C;

37.     During NEIMAN's deposition taken on January 10, 2012, he admitted to having discussed the demand letter during the meeting with the FAIDENGOLD's, and that he considered the claims made in the demand letter in making his recommendation to form the Double M Partnership, which NEIMAN promptly formed in March 2010.  *See*, excerpt of transcript of NEIMAN deposition attached hereto as Exhibit A.

38.     In his Petition, MOISES states that the Double M Partnership was funded by closing the FAIDENGOLD's joint brokerage account and transferring the remaining funds to the partnership.  *See*, D.E. 1, at pg. 36, ¶10; *See also*, Transcript of MARY's deposition, at p. 62, line 6 through p. 63, line 25, a copy of which is included as part of Exhibit C

39.     MARY was designated as the sole individual to represent the Double M Partnership (i.e., vis-à-vis the public, no one would know that MOISES was involved with the Double M Partnership).  *See*, Transcript of MARY's deposition, at p. 58, line 4 through p. 62, line 5, a copy of which is included as part of Exhibit C.

40.     MARY authorized the receipt of the transfer of funds from the joint brokerage accounting into the account of Double M Partnership.  *See*, Exhibit D.

41.     MOISES even claims on Schedule F that the Double M Partnership became a creditor to which he owes $37,072.00.  D.E. 1, at 23.

42.     In addition, MOISES claims in his bankruptcy Petition certain monthly household expenses; however, MARY recently testified that she is paying the household expenses that MOISES claims in his Petition:

> **Q     (By Mr. Wermuth) Do you know, more or less, how much on a monthly basis your family will spend?**

A       Right now -- right now, I know.

Q       **Okay. How much then?**

A       I would give an idea of -- in household expenses, without
        the house or with -- or everything we need. Without the
        house, it would be like $2,800-something around that
        figure.

Q       **$2,800? Plus, the mortgage?**

A       Yes.

Q       **Okay. And how much is the mortgage?**

A       About -- probably around $4,000. Something around that
        figure.

Q       **Okay.**

A       And then there are whatever extras -- one month, we have
        to pay the association or taxes or – I don't know what else.
        There's always something the tax in the car --

Q       **But generally, around $2,800 plus the mortgage?**

A       Without the things that you don't pay every month.

. . .

Q       **Did you know back in 2007, how much --**

A       No.

Q       **-- on a monthly basis?**

A       No.

Q       **Did you know in 2008?**

A       No.

Q       **In 2009?**

A       No.

Q       **2010?**

A       Yes.

Q       **Why the change? Why did you suddenly know?**

A       Because in 2010, after -- I would say March or April or
        May when I started working, I started paying the monthly
        bills.

. . .

Q       **Why did you start having to pay the monthly bills in
        March or April, whatever it was, when you started
        working?**

A       Because my husband didn't have the ability to pay it that's
        why I start paying.

*See*, Transcript of MARY's deposition, at p. 108, line 19 through
p. 111, line 20, a copy of which is attached hereto as Exhibit E.

43.    MOISES does not list his wife on Schedule I of his bankruptcy Petition.  *See*,

D.E. 1, at 28.

44.     All conditions precedent to this action have been performed, have occurred, or have been waived.

## COUNT I
## DEBTS ARE NON-DISCHARGEABLE
### (as to MOISES)

45.     Plaintiffs incorporate by reference in this Count I all allegations set forth above in paragraphs 1 through 44.

46.     MOISES owes at least $900,000.00 to DIANA, as well as such additional damages as may be awarded in the Pending Litigation, plus interest, attorneys' fees, and costs (the "DIANA Debt").

47.     MOISES owes at least $343,600.00 to NANCY, plus interest, attorneys' fees, and costs (the "NANCY Debt").

48.     MOISES owes at least $100,000.00 to FRANCISCO, plus interest, attorneys' fees, and costs (the "FRANCISCO Debt").

49.     MOISES gave receipts or certificates to each of the Plaintiffs corresponding to the increasing amount of funds that MOISES was investing and managing on their behalf over time. MOISES prepared the receipts/certificates in the English language in the form of promissory notes; however, all correspondence between MOISES and the Plaintiffs was in the Spanish language and at no time was there ever an understanding between MOISES and any Plaintiff to the effect that any Plaintiff had loaned any funds to MOISES.  Attached hereto as composite Exhibit F are true and correct copies of correspondence by MOISES (and certified translations thereof) referring to the issuance of the receipts/certificates.

50.     The last receipt MOISES gave to DIANA was for the aggregate sum of $900,000.00, a copy of which is attached hereto as Exhibit G.

51.     The last receipt MOISES gave to NANCY that is in NANCY's possession was for the aggregate sum of $330,000.00, a copy of which is attached hereto as Exhibit H.

52.     The last receipt MOISES gave to FRANCISCO was for the aggregate sum of $100,000.00.

53.     The DIANA Debt, the NANCY Debt, and the FRANCISCO Debt (collectively, the "Debt to Plaintiffs"), are non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(4), as well as 11 U.S.C. §727(a)(2) and §727(a)(3), and perhaps §727(a)(4) (given MOISES' claim to expenses being paid by MARY).

54.     The Debt to Plaintiffs was incurred initially by MOISES as the result of MOISES' fraudulent misrepresentations to Plaintiffs.

55.     MOISES misrepresented to Plaintiffs that MOISES would receive and invest, on Plaintiffs' behalf, the funds comprising the Debt to Plaintiffs.

56.     MOISES misrepresented to Plaintiffs that he would invest the Plaintiffs' funds in safe securities and provide to the Plaintiffs certain rates of return, paid monthly.

57.     MOISES held himself out and was known to the Plaintiffs as a successful businessman.

58.     MOISES represented to Plaintiffs that he had expertise in making investments in the U.S. stock market.

59.     Plaintiffs justifiably relied on the representations made by MOISES.

60.     Moreover, the funds comprising the Debt to Plaintiffs were delivered to MOISES over the course of two years, during which period MOISES paid to Plaintiffs the amounts that MOISES represented as being the monthly returns on their investments, thus fraudulently

misrepresenting the source of the returns.  For example, see copies (and certified translations) of correspondence from MOISES attached hereto as Exhibit I.

61.     MOISES even promised a bonus distribution to DIANA based on his allegedly successful management of her funds.  See copy of correspondence (and certified translation thereof) attached hereto as Exhibit J.

62.     MOISES sought Plaintiffs' trust and confidence, and Plaintiffs gave MOISES their trust and confidence.

63.     MOISES accepted the Plaintiffs' trust and confidence, representing to Plaintiffs that he was successfully investing and managing the Plaintiffs funds on the Plaintiffs' behalf.

64.     In addition, Plaintiffs understood that MOISES was investing and managing Plaintiffs' funds on Plaintiffs' behalf in such a manner as to keep separate accounts for each Plaintiff.   See copy of correspondence (and certified translation thereof) attached hereto as Exhibit K.

65.     An express or technical trust was established between MOISES and each of the Plaintiffs.

66.     MOISES breached his fiduciary duty to the Plaintiffs and defrauded them by misrepresenting his intended and actual use of their funds and by misappropriating, converting and stealing the Plaintiffs funds.

67.     Despite representing to the Plaintiffs that he would invest and manage their funds, which would involve complex accounts and bookkeeping, MOISES admitted (during the first Section 341(a) meeting of the creditors in MOISES' bankruptcy case) that he kept no records of the Plaintiffs' investment accounts, such as records of how each Plaintiffs' funds were invested, when the funds were invested, in which stock the funds were invested, etc.

68.     During the period of July 2007 through April 2010, MOISES and MARY depleted the Brokerage Account, including all of the Plaintiffs' funds, through fraud, misappropriation, conversion and theft.  During that same period, MOISES did not generate any investment profits that were distributed to the Plaintiffs' as a return on Plaintiffs' investments; rather, Plaintiffs' funds were used, in part, to pay one another's dividends and to pay off at least one lucky potential victim of MOISES's Ponzi scheme.

69.     Moreover, when MOISES's Ponzi scheme finally unraveled at the end of the year 2009 and beginning of 2010, the FAIDENGOLDS made a desperate attempt to abscond with the Plaintiffs remaining funds.

70.     Immediately after receiving the demand letter from DIANA's attorney on or about March 9, 2010, MOISES and MARY sought asset protection advice from NEIMAN, who is a member of the law firm of Lamont Neiman Interian & Bellet, P.A.  A copy of the retainer check is attached hereto as Exhibit L.

71.     On or about March 25, 2010, NEIMAN formed the Double M Partnership for the benefit of MARY and MOISES.

72.     On or about April 1, 2010, MARY opened an account with Schwab for the Double M Partnership.

73.     On or about April 6, 2010, the FAIDENGOLDS transferred all of the Plaintiffs' funds remaining in the Brokerage Account (i.e., $420,374.17), which represented 100% of the remaining value of the Brokerage Account, to the Schwab account of the Double M Partnership.

74.     If MOISES or MARY claims to have deposited any funds that were present in the Brokerage Account during the period of July 2007 through April 2010, such deposits must be

deemed, as a matter of law, to be the replacement of Plaintiffs' funds that were misappropriated, converted and stolen by MOISES and/or MARY.

**COUNT II**
**EQUITABLE ACCOUNTING, EQUITABLE LIEN AND CONSTRUCTIVE TRUST**
**(as to the FAIDENGOLDS)**

75.    Plaintiffs incorporate by reference in this Count II all allegations set forth above in paragraphs 1 through 74.

76.    As set forth above, MOISES promised that he would invest the Plaintiffs' money in safe securities, and provide them with an annual return of between 8% and 14%.  In reliance upon MOISES's promises, Plaintiffs entrusted to MOISES approximately $1,343,600.00 to invest and manage on their behalf using his expertise in investing in the U.S. stock market. Instead of investing and managing the Plaintiffs' money a promised, MOISES and MARY misappropriated, converted, and stole Plaintiffs' money.

77.    MOISES and MARY received and accepted the benefit of Plaintiffs' money.

78.    It would be inequitable and offend good conscience to allow the FAIDENGOLDS to keep the benefit of Plaintiffs' funds.

79.    In addition, MOISES claims to be financially bankrupt and unable to return Plaintiffs' funds.  MOISES admitted during the first meeting of the creditors that he kept no records of the Plaintiffs' investment accounts, such as records of how each Plaintiffs' funds were invested, when the funds were invested, in which stock the funds were invested, etc.  As a result of MOISES unlawful conduct, Plaintiffs are left with a complex muddle of accounts to sift through to determine the whereabouts of their funds.

80.     MOISES and MARY should be required to provide an accounting of their use of the Plaintiffs' funds, to allow Plaintiffs to identify assets that may be subject to equitable liens or constructive trusts in favor of Plaintiffs.

81.     Be that as it may, during the period of July 2007 through April 2010, MOISES and MARY depleted the Brokerage Account, including all of the Plaintiffs' funds, through fraud, misappropriation, conversion and theft.  During that same period, MOISES did not generate any investment profits that were distributed to the Plaintiffs' as a return on Plaintiffs' investments; rather, Plaintiffs' funds were used, in part, to pay one another's dividends and to pay off at least one lucky potential victim of MOISES's Ponzi scheme.

82.     Even if MOISES or MARY were to have deposited any funds that were present in the Brokerage Account during the period of July 2007 through April 2010, such deposits must be deemed, as a matter of law, to be the replacement of Plaintiffs' funds that were misappropriated, converted and stolen by MOISES and/or MARY.

83.     Plaintiffs are entitled to an equitable lien or constructive trust over all of the assets of the FAIDENGOLDS that comprise or may be traced to proceeds of Plaintiffs' funds (including without limitation as they exist in any transformed state) and to whatever has been bought with, improved, paid for, received the benefit of, or enjoyed increased value as the result of Plaintiffs' funds, including without limitation the interests of MOISES and/or MARY in the following assets:

        a)      The real property (house) and improvements located at 289 Landings Boulevard, Weston, Florida 33327.

        b)      Le Soleil Marine Boutique, Inc., a Florida entity, including without limitation any loans made to such company.

c)      Life insurance policies with ING ReliaStar Life Insurance Company (including policy No. 7141418).

d)      Medsigns Medical Equipment Corporation, a Florida entity

e)      Medsigns Imaging, Inc., a Florida entity

f)      Paramedis, C.A., a Venezuelan entity, including without limitation any loans made to such entity.

g)      Cormedis, C.A., a Venezuelan entity

h)      Con El Sol Diversion Marina C.A., a Venezuelan entity

i)      Double M Family Limited Partnership, a Florida entity

j)      Double M Management, LLC., a Florida entity

k)      Loan made by Moises Faidengold to Guilberto Reinaldo Ugarte in March 2011.

l)      Nissan vehicle corresponding to loan payment made in March 2009.

m)      Bank of America Account No. xxxx-xxxx-x993

n)      US Trust / Bank of America Account No. xxxx-xxxx-x102

o)      Charles Schwab & Co. Account No. xxxx-x141

p)      Charles Schwab & Co. Account No. xxxx-x197

q)      Charles Schwab & Co. Account No. xxxx-x754

r)      Charles Schwab & Co. SEP-IRA Account No. xxxx-x902

s)      Wachovia Bank Account No. xxx-xxxx-922 (in the name of Medsigns Medical Equipment Corporation)

t)      Wachovia Bank Account No. xxxx-xxxxx-x074 (in the name of Medsigns Imaging, Inc.)

u)       Bank of America Account No. xxxx-xxxx-x518 (in the name of Le Soleil Marine Boutique, Inc.)

v)       Banco Popular Account No. xxx-xxxx-116 (in the name of Le Soleil Marine Boutique, Inc.)

w)       Assets acquired using Citibank Credit Card Account No. xxxx-xxxx-xxxx-x424, the payment of which was made by Moises Faidengold and/or Mary Faidengold after June 2007.

## COUNT III
## DISALLOWANCE OF EXEMPTIONS
### (as to the FAIDENGOLDS)

84.       Plaintiffs incorporate by reference in this Count III all allegations set forth above in paragraphs 1 through 83.

85.       As set forth above, Plaintiffs are entitled to an equitable lien or constructive trust over all of the assets of the FAIDENGOLDS that comprise or may be traced to proceeds of Plaintiffs' funds (including without limitation as they exist in any transformed state) and to whatever has been bought with, improved, paid for, received the benefit of, or enjoyed increased value as the result of Plaintiffs' funds, regardless of whether such assets include those claimed to be exempt by MOISES and/or MARY.

86.       Whether MARY is innocent or lacked knowledge of the Ponzi scheme or fraud committed by MOISES is immaterial to whether an equitable lien or constructive trust may be imposed against the FAIDENGOLDS allegedly exempt property.

## COUNT IV
## INJUNCTIVE RELIEF
## (as to the FAIDENGOLDS)

87.     Plaintiffs incorporate by reference in this Count IV all allegations set forth above in paragraphs 1 through 86.

88.     This Court has jurisdiction to issue an injunction pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065(a).

89.     MOISES claims to be financially bankrupt, and MARY has testified that she is earning barely enough to cover the FAIDENGOLDS basic monthly bills.

90.     Accordingly, the FAIDENGOLDS are insolvent.

91.     Because the FAIDENGOLDS are insolvent, have misappropriated the Plaintiffs' funds, are in possession of property belonging to Plaintiffs, have already attempted to abscond with Plaintiffs' property after having been notified of the Plaintiffs' demand, and are spending and dissipating Plaintiffs' property, Plaintiffs' are entitled to a temporary restraining order and interlocutory injunction or permanent injunction to preserve Plaintiffs' rights associated with the imposition and turnover of funds and property subject to an equitable lien or constructive trust.

92.     Given the unlawful and wrongful conduct described above, Plaintiffs have a reasonable fear that Plaintiffs will transfer assets in a manner that Plaintiffs would no longer be able to reach them.   Moreover, every dollar spent by the FAIDENGOLDS is subject to dissipation and waste and will be not recoverable by Plaintiffs.

93.     The FAIDENGOLDS actions in connection with the formation of the Double M Partnership immediately after receiving the demand letter from DIANA's attorney, and the subsequent transfer of the Plaintiffs' funds from the Brokerage Account to the account of the

Double M Partnership highlight the necessity of injunctive relief to protect Plaintiffs in this matter.

94.     Without an injunction prohibiting the FAIDENGOLDS from liquidating or transferring all property in their possession or control, Plaintiffs will not have an adequate remedy in law, equity or otherwise to recover the spent or transferred property and will suffer irreparable harm.  Further, Plaintiffs will likely succeed on the merits and public interest factors support the entry of an injunction.

95.     Accordingly, this Court should enjoin the FAIDENGOLDS from liquidating or transferring during the pendency of this action any and all property or assets owned by the FAIDENGOLDS or in which either MOISES or MARY has or may claim to have an interest of any nature, kind, or description, including but not limited to, any and all real property, personal property, cash or cash equivalents, accounts, general intangibles, or contract rights.

96.     For the foregoing reasons, Plaintiffs request the issuance of an injunction, without bond, pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065, enjoining MOISES and MARY, or any other party, from liquidating or transferring any and all property or assets owned by the FAIDENGOLDS or in which either MOISES or MARY has or may claim to have an interest of any nature, kind, or description, including but not limited to, the property as described above in Paragraph 79 (list of certain assets), as well as any other real property, personal property, cash or cash equivalents, accounts, general intangibles, or contract rights.

## COUNT V
## PROHIBITION OF USE OF CASH COLLATERAL
## AND OTHER EQUITABLE RELIEF
## (As to the FAIDENGOLDS)

97.     Plaintiffs incorporate by reference in this Count V all allegations set forth above in paragraphs 1 through 96.

98.     Sections 105(A) and 363 of the United States Bankruptcy Code provide the Court with certain equitable discretion regarding the use of the FAIDENGOLDS property and assets.

99.     Much of the FAIDENGOLDS' cash and other property and assets that were bought, improved, paid for, received the benefit of, or enjoyed increased value after June 2007 were, in fact, bought with, improved, paid for, received the benefit of, or enjoyed increased value as the result of Plaintiffs' funds.

100.     Under section 363 of the Bankruptcy Code, "cash collateral" is defined as "cash . . . in which the estate or any entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . ."

101.     The property in the FAIDENGOLDS that Plaintiffs have a right to an equitable lien or constructive trust over is Plaintiffs' cash collateral.  Accordingly, the Court should enter an order prohibiting the FAIDENGOLDS' use of the Plaintiffs' cash collateral unless Plaintiffs' interests in its cash collateral are adequately protected.

102.     In the alternative, Plaintiffs request that the Court enter an order strictly limiting the FAIDENGOLDS' use of the proceeds of the above-described fraud or Ponzi scheme or any property or assets that were bought with, improved, paid for, received the benefit of, or enjoyed increased value after June 2007 as the result of Plaintiffs funds.

## COUNT VI
## CONSPIRACY TO COMMIT FRAUD
### (As to all Defendants)

103.    Plaintiffs incorporate by reference in this Count VI all allegations set forth above in paragraphs 1 through 86.

104.    Within a few days after MOISES received the demand letter from DIANA's attorney, the FAIDENGOLDS met with NEIMAN and showed NEIMAN the demand letter.

105.    Taking into consideration the demand letter, NEIMAN advised the FAIDENGOLDS to form the Double M Partnership in order to defraud, hinder or delay any attempts by the Plaintiffs to recover their funds.

106.    The FAIDENGOLDS hired NEIMAN to structure and form the Double M Partnership, and NEIMAN did so, such that MARY appeared vís-a-vís the public as the only person involved in the partnership.

107.    MARY opened an account for the Double M Partnership with Schwab, and the FAIDENGOLDS then transferred to the partnerships' account all of the Plaintiffs' funds that remained in the Brokerage Account.  NEIMAN's file contained documentation of the partnership account and transfer of funds.

108.    The FAIDENGOLDS now claim that the Plaintiffs' funds transferred from the Brokerage Account (i.e., $420,374.17) to the account of the Double M Partnership, are exempt from the claims of Plaintiffs as per the counsel and assistance of NEIMAN.  *See*, D.E. 1, at pg. 16.

**WHEREFORE**, Plaintiffs DIANA ESCORIHUELA, MARIA NANCY DE ASCENCAO RODRIGUEZ, and FRANCISCO RODRIGUEZ request judgment in their favor as follows:

A.      That DIANA ESCORIHUELA recover from MOISES FAIDENGOLD and MARY FAIDENGOLD at least $900,000.00, as well as such additional damages as may be awarded in the Pending Litigation, plus interest, attorneys' fees, and costs.

B.      That MARIA NANCY DE ASCENCAO RODRIGUEZ recover from MOISES FAIDENGOLD and MARY FAIDENGOLD at least $343,600.00, plus interest, attorneys' fees, and costs.

C.      That FRANCISCO RODRIGUEZ recover from MOISES FAIDENGOLD and MARY FAIDENGOLD at least $100,000.00, plus interest, attorneys' fees, and costs.

D.      That JAN NEIMAN is jointly and severally liable with MOISES FAIDENGOLD and MARY FAIDENGOLD for at least $420,374.17 of the amount which the Plaintiffs are entitled to recover.

E.      That MOISES FAIDENGOLD and MARY FAIDENGOLD provide an accounting of the use of the Plaintiffs' funds, including without limitation such detail as will allow Plaintiffs to identify assets that may be subject to equitable liens or constructive trusts in favor of Plaintiffs.

F.      That an equitable lien or constructive trust be imposed on and cover any and all property or assets owned by each of MOISES FAIDENGOLD or MARY FAIDENGOLD or in which one or both of the them has or may claim to have an interest of any nature, kind, or description, including but not limited to, any and all real property, personal property, cash or cash equivalents, accounts, general intangibles, or contract rights and, in the alternative, issuing an Order strictly limiting MOISES FAIDENGOLD and MARY FAIDENGOLD's use of the proceeds of the above-described Ponzi scheme or any property or assets purchased or acquired with such proceeds;

G.      That Plaintiffs' be given possession of any proceeds of the above-described Ponzi scheme in Defendants' possession, as well as any and all property or assets acquired by any of the Defendants with proceeds from the above-described Ponzi scheme;

H.      That MOISES FAIDENGOLD and MARY FAIDENGOLD be prohibited from using any property or assets owned by them or in which one or both of them has or may claim to have an interest, all of which constitute the Plaintiffs' cash collateral, unless and until Defendants adequately protect the Plaintiffs' interest in its cash collateral;

I.      That the amounts that Plaintiffs are entitled to recover in this action are not dischargeable;

J.      That the exemptions claimed by MOISES FAIDENGOLD or MARY FAIDENGOLD be disallowed with respect to any and all assets that comprise assets subject to equitable lien or comprising the *res* of the constructive trust;

K.      That a preliminary injunction be issued to prohibit MOISES FAIDENGOLD and MARY FAIDENGOLD from liquidating or transferring any and all property or assets owned by them or in which one or both of them has or may claim to have an interest of any nature, kind, or description, including but not limited to, any and all real property, personal property, cash or cash equivalents, accounts, general intangibles, or contract rights.   Said injunction should apply to MOISES FAIDENGOLD and MARY FAIDENGOLD's property (as previously described) as well as any property of the Plaintiffs in Defendants' possession; and

L.      Granting such other and further relief as is just and appropriate under the circumstances.

Respectfully submitted,

**GONZALEZ & WERMUTH**
Attorney for Plaintiffs
8750 NW 36th Street, Suite 425
Miami, Florida 33178
Phone: (305) 715-7157
Fax: (305) 715-8982
E-Mail: michael@rgmwlaw.com


By: /s/ J. Michael Wermuth
    J. Michael Wermuth, Esq.
    Florida Bar No.:50768