## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 11-44944-RBR |
| MOISES FAIDENGOLD, | : | |
| | : | Chapter 7 |
| Debtor. | : | |
| | : | Adversary No. 12−01259−RBR |

| | | |
|---|---|---|
| DIANA ESCORIHUELA, an individual, and | : | |
| MARIA NANCY DE ASCENCAO | : | |
| RODRIGUEZ, an individual, and | : | |
| FRANCISCO RODRIGUEZ, an individual, | : | |
| | : | |
| Plaintiffs, | : | **SECOND AMENDED** |
| | : | **ADVERSARY COMPLAINT** |
| vs. | : | |
| | : | |
| MOISES FAIDENGOLD, an individual, and | : | |
| KENNETH A. WELT, Chapter 7 Trustee, | : | |
| | : | |
| Defendants. | : | |

Plaintiffs, DIANA ESCORIHUELA ("**DIANA**"), MARIA NANCY DE ASCENCAO

RODRIGUEZ ("**NANCY**"), and FRANCISCO RODRIGUEZ ("**FRANCISCO**"), by and

through counsel, file this Second Amended Adversary Complaint against Defendant/Debtor

MOISES FAIDENGOLD and KENNETH A. WELT, Chapter 7 Trustee, as follows:

**Nature of the Action**

1.      Plaintiffs DIANA, NANCY, and FRANCISCO were the sole victims of the Defendant/Debtor's short-lived Ponzi scheme.

2.      In the aggregate, Defendant/Debtor misappropriated, converted and stole from the Plaintiffs approximately $1,343,600.00.

3.      Beginning in 2007, approximately one year before the 2008 stock market crash, Defendant/Debtor began soliciting funds from the Plaintiffs in exchange for his promise to invest the funds on the Plaintiffs' behalf in safe securities and to provide the Plaintiffs with certain rates of return (i.e., 8% to 14% annually), paid monthly.

4.      Plaintiffs trusted Defendant/Debtor and had confidence in his professed expertise. In reliance upon Defendant/Debtor' representations, Plaintiffs delivered to Defendant/Debtor over the course of approximately two years (June 2007 through October 2009) approximately $1,343,600.00 to invest on their behalf.  Defendant/Debtor provided Plaintiffs with receipts for their investments and he paid to Plaintiffs monthly dividends.  When Plaintiffs demanded the return of their investments, Defendant/Debtor' fraudulent scheme quickly unraveled.

5.      Plaintiffs' funds were deposited in brokerage account No. xxxxx197 at Charles Schwab & Co., Inc. ("**Schwab**"), held jointly in the names of Defendant/Debtor and his wife, Mrs. Mary Faidengold (the "**Investment Account**"), except for $75,000 of DIANA's money that Defendant/Debtor unabashedly deposited directly in the joint bank account of the Defendant/Debtor and Mrs. Faidengold, at Bank of America (the "**BoA Joint Account**").

6.      When the Plaintiffs demanded the return of their money, Defendant/Debtor and Mrs. Faidengold (together, the "**FAIDENGOLDS**") turned to Mr. Jan Neiman ("**NEIMAN**"), an asset protection attorney, to assist them in preventing the Plaintiffs from recovering the

Plaintiffs' funds.  NEIMAN assisted the FAIDENGOLDS in creating complex structure involving a Florida family limited partnership (i.e., Defendant Double M. Family Limited Partnership) in an attempt to prevent the Plaintiffs from recovering their money.

7.      In April 2010, the FAIDENGOLDS transferred the balance of the Investment Account (i.e., approximately $420,374.17), which comprised the Plaintiffs' funds, to the newly opened account of the Double M. Family Limited Partnership (the "**Double M Partnership**") at Schwab.

8.      Between June 2007 and April 2010, the FAIDENGOLDS deposited relatively little, if any, of their own money in the Investment Account (total deposits during that period were approximately $1,814,881.08).  In June 2007, the Investment Account had an opening balance of $62,222.76.  From June 2007 through April 2010, the FAIDENGOLDS misappropriated, converted and stole all of the Plaintiffs' funds from the Investment Account.  In total, the FAIDENGOLDS withdrew approximately $1,652,900.81 from the Investment Account.   Some of those withdraws were used to pay the dividends to the Plaintiffs.

9.      When Defendant/Debtor failed to return DIANA's funds as promised, DIANA hired an attorney and filed the pending action Diana Escorihuela v. Moises Faidengold and Mary Faidengold, Case No. 10-23693 CA 27, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "**Pending Lawsuit**").

10.      The trial in the Pending Lawsuit was scheduled to commence within one month after Defendant/Debtor filed for bankruptcy protection.  In the eleventh-hour, Defendant/Debtor filed for bankruptcy protection to avoid going to trial for his wrongful, unlawful, and fraudulent acts.

11.     Plaintiffs seek to (a) recover their $1,343,600.00 that was fraudulently obtained, misappropriated, converted, and stolen by Debtor/Defendant; (b) prevent the discharge of Defendant/Debtor's debt to the Plaintiffs; (c) require Defendant/Debtor to provide an equitable accounting of the Plaintiffs' funds; (d) establish an equitable lien and/or constructive trust over assets of Defendant/Debtor, or within his control, to the extent that they comprise, or may be traced to proceeds of, Plaintiffs' funds (including, without limitation, as they exist in any transformed state) and to whatever has been bought with, improved, paid for, received the benefit of, or enjoyed increased value as the result of Plaintiffs' funds; (e) establish the priority of Plaintiffs' equitable lien or constructive trust; and (f) obtain relief from the automatic stay to the extent, if any, required to pursue to foregoing relief and to obtain possession of the assets subject to the equitable lien or comprising the constructive trust.

12.     The Trustee is named as a defendant solely for the purposes of adjudicating the priority of the Plaintiffs' constructive trust and equitable lien vis-a-vis the Trustee's liens and claims to the assets comprising the *res* of the Plaintiffs' constructive trust or the subject of the Plaintiffs' equitable lien.  The Plaintiffs seek no other relief as against the Trustee.

### The Parties

13.     Plaintiff DIANA ESCORIHUELA is a Venezuelan citizen and individual, sui juris, residing in Caracas, Venezuela.

14.     Plaintiff MARIA NANCY DE ASCENCAO RODRIGUEZ is a Venezuelan citizen and individual, sui juris, residing in Caracas, Venezuela.

15.     Plaintiff FRANCISCO RODRIGUEZ is a Venezuelan citizen and individual, sui juris, residing in Caracas, Venezuela.

16.     Defendant/Debtor MOISES FAIDENGOLD is an individual, sui juris, and at all times material was a resident of Broward County, Florida.

4

17.     Defendant KENNETH A. WELT ("**Trustee**") is the appointed and acting Chapter 7 Trustee for the Defendant/Debtor's bankruptcy estate.

## Jurisdiction and Venue

18.      This is a civil proceeding arising under the Bankruptcy Code or arising in or related to a case under the Bankruptcy Code within the meaning of 28 U.S.C. 1334(b).

19.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because this action is related to the underlying bankruptcy case of Defendants which is pending before this Court.

20.     This Court also has jurisdiction over this adversary proceeding pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001(1), (2), (6), (7) and (9), and 7065.

21.     This is a core proceeding under 28 U.S.C. § 157 as this action (a) seeks to recover certain amounts, assets, and damages from the Defendant/Debtor;  (b) involves the request to turn over property in which Defendant/Debtor has, at most, legal title; (c) constitutes an objection to the discharge of Plaintiffs' claims against the Defendant/Debtor pursuant to §523(a); (d) includes an objection to exemptions claimed by Defendant/Debtor; (e) seeks to determine the validity, priority and/or extent of Plaintiffs' equitable lien or constructive trust; and (f) seeks to obtain relief from the automatic stay to the extent necessary to pursue to foregoing relief and obtain possession of the assets subject to the equitable lien or comprising the constructive trust.

22.     Defendants' Chapter 7 bankruptcy case is pending before this Court. Accordingly, venue of this adversary proceeding is proper in this Court under 28 U.S.C. 1409(a).

23.     The claims raised in this adversary proceeding arose in part from Defendant/Debtor's actions in Florida.

**General Allegations**

24.     Defendant/Debtor is not an honest debtor; rather, his insolvency was prompted by the unraveling of his short-lived Ponzi scheme, the sole unfortunate victims of which are the Plaintiffs.

25.     Defendant/Debtor filed his bankruptcy petition on December 23, 2011, in an attempt to avoid going to trial for fraud in the Pending Lawsuit, which was set and ready to go to trial in January 2012.

26.     The Pending Lawsuit was commenced by DIANA after Defendant/Debtor failed to return to her the money which DIANA had entrusted to him to invest on her behalf.

27.     DIANA entrusted $900,000.00 (the "**DIANA Fund**") to Defendant/Debtor.

28.     DIANA entrusted the DIANA Fund to Defendant/Debtor after Defendant/Debtor represented to her that he would invest the DIANA Fund in safe securities and provide her with an 8% to 14% annual return, paid monthly.

29.     DIANA delivered the DIANA Fund to Defendant/Debtor in specific and identifiable sums by check, wire transfer or cash, which sums were also identified and acknowledged in writing by Defendant/Debtor.

30.     Defendant/Debtor has failed to fulfill his obligation to return the DIANA Fund, which fund existed to generate income for DIANA and thereafter was to be returned to DIANA.

31.     NANCY entrusted $343,600.00 (the "**NANCY Fund**") to Defendant/Debtor.

32.     NANCY entrusted the NANCY Fund to Defendant/Debtor after Defendant/Debtor represented to her that he would invest the NANCY Fund in safe securities, and provide NANCY with an 8% to 12% annual return, paid monthly.

6

33.     NANCY delivered the NANCY Fund to Defendant/Debtor in specific and identifiable sums by check, wire transfer or cash, which sums were also identified and acknowledged in writing by Defendant/Debtor.

34.     Defendant/Debtor has failed to fulfill his obligation to return the NANCY Fund, which fund existed to generate income for NANCY and thereafter was to be returned to NANCY.

35.     FRANCISCO entrusted at least $100,000 (the "**FRANCISCO Fund**") to Defendant/Debtor.

36.     FRANCISCO entrusted the FRANCISCO Fund to Defendant/Debtor after Defendant/Debtor represented that he would invest the FRANCISCO Fund in safe securities, and provide FRANCISCO with an 8% to 12% annual return, paid monthly.

37.     FRANCISCO delivered the FRANCISCO Fund to Defendant/Debtor in specific and identifiable sums by check, wire transfer or cash, which sums were also identified and acknowledged in writing by Defendant/Debtor.

38.     Defendant/Debtor has failed to fulfill his obligation to return the FRANCISCO Fund, which fund existed to generate income for FRANCISCO and was thereafter to be returned to FRANCISCO.

39.     The DIANA Fund, the NANCY Fund, and the FRANCISCO Fund (collectively, the "**Plaintiffs' Fund**") was deposited in the Investment Account, except for $75,000 of the DIANA Fund that Defendant/Debtor unabashedly deposited directly in the FAIDENGOLDS' BoA Joint Account.

40.     Plaintiffs understood that Defendant/Debtor was investing and managing the Plaintiffs' Fund on the Plaintiffs' behalf in such a manner as to keep separate accounts for each

Plaintiff.  See copy of correspondence (and certified translation thereof) attached hereto as Exhibit A.

41.     Contrary to Defendant/Debtor' representations regarding the investment and management of the Plaintiffs' Fund, which would involve complex accounts and bookkeeping, Defendant/Debtor admitted (during the first Section 341(a) meeting of the creditors in Defendant/Debtor' bankruptcy case) that he kept no records of the Plaintiffs' investment accounts, such as records of how each Plaintiff's funds were invested, when the funds were invested, in which stock the funds were invested, etc.

42.     During the period of July 2007 through April 2010, Defendant/Debtor misappropriated, converted and stole the Plaintiffs' Fund.  During that same period, Defendant/Debtor did not generate any investment profits that were distributed to the Plaintiffs as an investment return on the Plaintiffs' Fund; rather, the Plaintiffs' Fund was used, in part, to pay dividends to Plaintiffs.

43.     When Defendant/Debtor failed to return the DIANA Fund, DIANA hired an attorney who sent a demand letter to Defendant/Debtor on or about March 9, 2010 (the "**Demand Letter**").  A copy of the demand letter attached hereto as Exhibit B.

44.     Immediately after receiving the Demand Letter from DIANA's attorney on or about March 9, 2010, the FAIDENGOLDS sought assistance from NEIMAN, who is a member of the law firm of Lamont Neiman Interian & Bellet, P.A.  A copy of the retainer check is attached hereto as Exhibit C.  *See also*, Transcript of Mrs. Faidengold's deposition, at p. 55, line 3 through p. 58, line 1, a copy of which is attached hereto as Exhibit D.

45.     The FAIDENGOLDS sought the assistance of NEIMAN to appropriate the Plaintiffs' Fund and to unlawfully deprive the Plaintiffs of the Plaintiffs' Fund.

46.     NEIMAN reviewed the content of the Demand Letter and, having taken the content of such letter into consideration, agreed to assist the FAIDENGOLDS.

47.     NEIMAN recommended that the FAIDEGOLDS form the Double M Partnership and transfer to such partnership the money remaining in the Investment Account.  *See*, Transcript of NEIMAN deposition, at p. 15, line 23 through p. 17, line 8; and p. 20, line 22 through p. 23, line 7; copies of which are attached hereto as composite Exhibit E.

48.     NEIMAN formed and organized the Double M Partnership in late March 2010.

49.     Mrs. Faidengold was designated as the sole individual to represent the Double M Partnership (i.e., vis-à-vis the public, no one would know that Defendant/Debtor was involved with the Double M Partnership).  *See*, Transcript of Mrs. Faidengold's deposition, at p. 58, line 4 through p. 62, line 5, a copy of which is included as part of Exhibit D.

50.     On or about April 1, 2010, Mrs. Faidengold opened an account with Schwab for the Double M Partnership.

51.     On or about April 6, 2010, the FAIDENGOLDS transferred all of the Plaintiffs' Fund remaining in the Investment Account (i.e., $420,374.17), which represented 100% of the remaining value of the Investment Account, to the Schwab account of the Double M Partnership. *See*, Bankruptcy Petition [D.E. 1], at pg. 36, ¶10; *See also*, Transcript of Mrs. Faidengold's deposition, at p. 62, line 6 through p. 63, line 25, a copy of which is included as part of Exhibit D.

52.     Mrs. Faidengold authorized the receipt of the transfer of the Plaintiffs' Fund from the joint brokerage accounting into the account of Double M Partnership.  *See*, Exhibit F.

53.     Defendant/Debtor even claims on Schedule F that the Double M Partnership became a creditor to which he owes $37,072.00.  *See*, Bankruptcy Case, D.E. 1, at 23.

54.     When DIANA and NANCY became aware that Defendant/Debtor had stolen their funds, they were severely distraught and suffered severe emotional distress, as those funds represented all or substantially all of their life savings.

55.     The Plaintiffs have hired the undersigned counsel to represent them in this action, and have agreed to pay a reasonable fee and costs to the undersigned counsel in connection with such representation.

56.     All conditions precedent to this action have been performed, have occurred, or have been waived.

## COUNT I
## FRAUD
### (as to Moises Faidengold)

57.     Plaintiffs incorporate by reference in this count all allegations set forth above in paragraphs 1 through 56.

58.     Defendant/Debtor held himself out and was known to the Plaintiffs as a successful businessman.

59.     Defendant/Debtor represented to Plaintiffs that he had expertise in making investments in the U.S. stock market.

60.     Defendant/Debtor represented to DIANA that Defendant/Debtor would receive and invest, on DIANA's behalf, the DIANA Fund.

61.     Defendant/Debtor represented to NANCY that Defendant/Debtor would receive and invest, on NANCY's behalf, the NANCY Fund.

62.     Defendant/Debtor represented to FRANCISCO that Defendant/Debtor would receive and invest, on FRANCISCO's behalf, the FRANCISCO Fund.

63.     Defendant/Debtor represented to Plaintiffs that he would invest the Plaintiffs' Fund in safe securities and provide to the Plaintiffs certain rates of return, paid monthly.

64.     Defendant/Debtor knowingly misrepresented his intentions to the Plaintiffs, and he did so to induce the Plaintiffs to deliver their funds to Defendant/Debtor.

65.     Plaintiffs justifiably relied on the representations made by Defendant/Debtor.

66.     Based on the representations made by Defendant/Debtor, Plaintiffs delivered their money to Defendant/Debtor.

67.     When Defendant/Debtor received the Plaintiffs' Fund, he did not invest such fund on the Plaintiffs' behalf in safe securities generating a return which he would pay to Plaintiffs. Instead, Defendant/Debtor misappropriated, converted, and stole the Plaintiffs' Fund.

68.     Moreover, the money comprising the Plaintiffs' Fund was delivered to Defendant/Debtor over the course of two years, during which period Defendant/Debtor paid to Plaintiffs the amounts that Defendant/Debtor represented as being the monthly returns on their investments, thus fraudulently misrepresenting the source of the returns.  For example, see copies (and certified translations) of correspondence from Defendant/Debtor attached hereto as Exhibit G.

69.     Defendant/Debtor even promised a bonus distribution to DIANA based on his allegedly successful management of her funds.  See copy of correspondence (and certified translation thereof) attached hereto as Exhibit H.

70.     Defendant/Debtor sought Plaintiffs' trust and confidence, Plaintiffs gave Defendant/Debtor their trust and confidence, Defendant/Debtor accepted the Plaintiffs' trust and confidence, and Defendant/Debtor betrayed the Plaintiffs' trust and confidence.

71.     Defendant/Debtor owed a fiduciary duty to the Plaintiffs, which he breached by fraudulently misrepresenting his intended and actual use of the Plaintiffs' Fund and by misappropriating, converting and stealing the Plaintiffs' Fund.

72.     As a result of the fraud perpetrated by Defendant/Debtor, the Plaintiffs have suffered the loss of the Plaintiffs' Fund (i.e., approximately $1,343,600.00).

73.     The DIANA Fund and the NANCY Fund represented all or substantially all of DIANA's and NANCY's respective life savings.

74.     As a result of the fraud perpetrated by Defendant/Debtor, DIANA and NANCY have suffered severe emotional distress in addition to their pecuniary losses.

## COUNT II
## OBJECTION TO DISCHARGE
## PURSUANT TO 11 U.S.C. §523(a)(2)(A)

75.     Plaintiffs incorporate by reference in this count all allegations set forth above in paragraphs 1 through 74.

76.     Defendant/Debtor obtained the monies comprising the Plaintiffs' Fund (i.e., the DIANA Fund, the NANCY Fund, and the FRANCISCO Fund) by means of false pretenses, false representations, and/or actual fraud, as set forth above in Count I.

77.     Defendant/Debtor falsely represented to Plaintiffs that he would invest the Plaintiffs' Fund in safe securities and provide to the Plaintiffs certain rates of return, paid monthly.

78.     Defendant/Debtor knowingly misrepresented his intentions to the Plaintiffs, and he did so to induce the Plaintiffs to deliver their funds to Defendant/Debtor.

79.     Plaintiffs knew Defendant/Debtor to be a successful businessman with a professed expertise in making investments in the U.S. stock market.

80.    Plaintiffs justifiably relied on the representations made by Defendant/Debtor.

81.    Based on the representations made by Defendant/Debtor, Plaintiffs delivered their money to Defendant/Debtor.

82.    Instead of investing the Plaintiffs' Fund on the Plaintiffs' behalf in safe securities, Defendant/Debtor misappropriated, converted, and stole the Plaintiffs' Fund.

83.    As a result of the fraud perpetrated by Defendant/Debtor, the Plaintiffs have suffered the loss of the Plaintiffs' Fund (i.e., approximately $1,343,600.00).

84.    The loss of the Plaintiffs' Fund and related damages suffered by Plaintiffs constitute a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(2)(A).

## COUNT III
## CONVERSION
### (as to Moises Faidengold)

85.    Plaintiffs incorporate by reference in this count all allegations set forth above in paragraphs 1 through 74.

86.    With the exception of $75,000 comprising part of the DIANA Fund, the Plaintiffs' Fund was deposited in the Investment Account, which was a joint account owned by the FAIDENGOLDS.

87.    The $75,000 of the DIANA Fund that was not deposited in the Investment Account was deposited in the FAIDENGOLDS' BoA Joint Account.

88.    Defendant/Debtor knowingly obtained the Plaintiffs' Fund with the intent to deprive the Plaintiffs of the right or benefit from it.

89.    No Plaintiff authorized Defendant/Debtor or Mrs. Faidengold to use the Plaintiff's funds for any purpose other than to generate income for such Plaintiff and then to return such Plaintiff's funds.

90.     Defendant/Debtor lied to Plaintiffs about his managing and use of the Plaintiffs'
Fund.

91.     Instead of managing and investing the Plaintiffs' Fund on behalf and for the
benefit of Plaintiffs, as Defendant/Debtor promised, Defendant/Debtor stole the Plaintiffs' Fund.

92.     It was not until after Defendant/Debtor failed to return the DIANA Fund on or
about early March 2010 that the Plaintiffs discovered or should have discovered that
Defendant/Debtor had been misappropriating, converting, and stealing the Plaintiffs' Fund.

93.     In addition to the pecuniary loss of the Plaintiffs' Fund caused by
Defendant/Debtor's conversion of the Plaintiffs' Fund, DIANA and NANCY have suffered
severe emotional distress.

94.     This is a cause of action for common law conversion.  This is not a cause of
action under Chapter 726 or §222.30, Florida Statutes.

**COUNT IV**
**OBJECTION TO DISCHARGE**
**PURSUANT TO 11 U.S.C. §523(a)(6)**

95.     Plaintiffs incorporate by reference in this count all allegations set forth above in
paragraphs 1 through 74, and 85 through 94.

96.     Debtor/Defendant willfully converted the Plaintiffs' Fund, as shown by his
deliberate and fraudulent misrepresentations to the Plaintiffs in order to obtain the Plaintiffs'
Fund, and his immediate misappropriation and conversion of the Plaintiffs' Fund even as he
solicited more funds from Plaintiffs, and then his subsequent deliberate attempts to prevent
Plaintiffs' from recovering the Plaintiffs Fund.

97.     Defendant/Debtor's misappropriation, conversion, and theft of the Plaintiffs' Fund constitutes a willful and malicious injury sufficient to except from discharge the resulting damages suffered by Plaintiffs pursuant to 11 U.S.C. §523(a)(6).

**COUNT V**
**CIVIL THEFT**
**(as to Moises Faidengold)**

98.     Plaintiffs incorporate by reference in this count all allegations set forth above in paragraphs 1 through 74, and 85 through 94.

99.     Defendant/Debtor lied when he promised to invest the Plaintiffs' Fund on the Plaintiffs' behalf in safe securities in the U.S. stock market.

100.     Defendant/Debtor knew that the Plaintiffs' Fund was not his to use for his own purposes or benefit.

101.     Nevertheless, Defendant/Debtor took the Plaintiffs' funds for his own benefit even as he continued to solicit and receive more funds from Plaintiffs' based on his false representations that such funds would continue to be invested on the Plaintiffs' behalf in safe securities in the U.S. stock market.

102.     On or about the time of the Demand Letter, when Plaintiffs' finally became aware the Defendant/Debtor may have stolen the Plaintiffs' Fund, Defendant/Debtor took the additional step of attempting to prevent Plaintiffs from recovering the Plaintiffs' Fund.

103.     Defendant/Debtors felonious intent in connection with his conversion of the Plaintiffs' Fund constitutes civil theft pursuant to §772.11, Florida Statutes.

## COUNT VI
## OBJECTION TO DISCHARGE
## PURSUANT TO 11 U.S.C. §523(a)(4)

104.     Plaintiffs incorporate by reference in this count all allegations set forth above in paragraphs 1 through 74, and 85 through 94, and 98 through 103.

105.     Defendant/Debtor demonstrated his felonious intent to convert the Plaintiffs' Fund by, among other things, misappropriating the Plaintiffs' funds for his own benefit even as he continued to solicit and receive more funds from Plaintiffs' based on his false representations that such funds would continue to be invested on the Plaintiffs' behalf in safe securities in the U.S. stock market.

106.     Defendant/Debtor further demonstrated his felonious intent to deprive Plaintiffs' of their funds by attempting to prevent Plaintiffs from recovering the Plaintiffs' Fund.

107.     Defendant/Debtor's felonious taking of the Plaintiffs' Fund with the intent to convert it or to permanently deprive Plaintiffs' of it constitutes larceny; therefore, Plaintiffs' loss of the Plaintiffs' Fund and Plaintiffs' related damages are non-dischargeable pursuant to 11 U.S.C. §523 (a)(4).

108.     Even if Defendant/Debtor had not defrauded Plaintiffs in order to obtain the Plaintiffs' Fund, Defendant/Debtor's subsequent misappropriation of the Plaintiffs' Fund and lies to Plaintiffs about the use of the Plaintiffs' Fund with the intent to convert it and permanently deprive Plaintiffs of it, constitutes embezzlement; therefore, Plaintiffs' loss of the Plaintiffs' Fund and Plaintiffs' related damages would be non-dischargeable pursuant to 11 U.S.C. §523 (a)(4) as well.

## COUNT VII
## EQUITABLE ACCOUNTING, EQUITABLE LIEN
## AND CONSTRUCTIVE TRUST
### (as to Moises Faidengold)

109.     Plaintiffs incorporate by reference in this count all allegations set forth above in

paragraphs 1 through 74, and 85 through 94, and 98 through 103.

110.     As set forth above, Defendant/Debtor promised that he would invest Plaintiffs'

Fund in safe securities, and provide Plaintiffs with an annual return of between 8% and 14%.  In

reliance upon Defendant/Debtor's promises, Plaintiffs entrusted to Defendant/Debtor

approximately $1,343,600.00 to invest and manage on their behalf using his expertise in

investing in the U.S. stock market.  Instead of investing and managing the Plaintiffs' Fund as

promised, the FAIDENGOLD's misappropriated, converted, and stole the Plaintiffs' Fund.

111.     Debtor/Defendant received and accepted the benefit of the Plaintiffs' Fund.

112.     It would be inequitable and offend good conscience to allow the

Debtor/Defendant to keep the benefit of Plaintiffs' Fund.

113.     In addition, Defendant/Debtor claims to be financially bankrupt and unable to

return Plaintiffs' Fund.  Defendant/Debtor admitted during the first meeting of the creditors that

he kept no records of the Plaintiffs' investment accounts, such as records of how each Plaintiffs'

funds were invested, when the funds were invested, in which stock the funds were invested, etc.

As a result of Defendant/Debtor unlawful conduct, Plaintiffs are left with a complex muddle of

accounts to sift through to determine the whereabouts of the Plaintiffs' Fund.

114.     Defendant/Debtor should be required to provide an accounting of the whereabouts

of the Plaintiffs' Fund, to allow Plaintiffs to identify all assets that may be subject to an equitable

lien or constructive trust in favor of Plaintiffs.

115.     Any funds of the FAIDENGOLDS that may have been deposited in the Investment Account during the period of July 2007 through April 2010 merely replaced the Plaintiffs' Fund to the extent it was withdrawn or transferred from the Investment Account.

116.     Plaintiffs are entitled to an equitable lien or constructive trust over all assets of Defendant/Debtor, to the extent such assets belong to Defendant/Debtor or are within his or the Trustee's control and comprise or may be traced to proceeds of Plaintiffs' Fund (including, without limitation, as the fund exists in any transformed state) and to whatever has been bought with, improved, paid for, received the benefit of, or enjoyed increased value as the result of Plaintiffs' Fund, including without limitation Defendant/Debtor's interest in the following assets (the "**Constructive Trust Assets**"):

a)     The real property (house) and improvements located at 289 Landings Boulevard, Weston, Florida 33327, which was purchased and paid for by the Defendant/Debtor using more than $104,000 of the Plaintiffs' Fund (which amount was delivered in specific, identifiable funds).

b)     Le Soleil Marine Boutique, Inc., a Florida entity, including without limitation any loans made to such company, which received at least $40,000 of the Plaintiffs' Fund (which amount was delivered in specific, identifiable funds).

c)     Life insurance policies with ING ReliaStar Life Insurance Company (including policy No. 7141418), which received at least $85,000 of the Plaintiffs' Fund (which amount was delivered in specific, identifiable funds).

d)     Medsigns Imaging, Inc., a Florida entity, which received at least $106,000 of the Plaintiffs' Fund (which amount was delivered in specific, identifiable funds).

e)      Double M Family Limited Partnership, a Florida entity, which received at least $420,000 of the Plaintiffs' Fund (which amount was delivered in specific, identifiable funds).

f)      Bank of America Account No. xxxx-xxxx-x993, which received more than $375,000 of the Plaintiffs' Fund (which amount was delivered in specific, identifiable funds).

g)      US Trust / Bank of America Account No. xxxx-xxxx-x102.

h)      Charles Schwab & Co. Account No. xxxx-x141.

i)      Charles Schwab & Co. Account No. xxxx-x197.

j)      Charles Schwab & Co. Account No. xxxx-x754.

k)      Charles Schwab & Co. SEP-IRA Account No. xxxx-x902.

l)      Wachovia Bank Account No. xxx-xxxx-922 (in the name of Medsigns Medical Equipment Corporation).

m)      Wachovia Bank Account No. xxxx-xxxxx-x074 (in the name of Medsigns Imaging, Inc.).

n)      Bank of America Account No. xxxx-xxxx-x518 (in the name of Le Soleil Marine Boutique, Inc.).

o)      Banco Popular Account No. xxx-xxxx-116 (in the name of Le Soleil Marine Boutique, Inc.).

**COUNT VIII**
**OBJECTION TO EXEMPTIONS**
**(as to Moises Faidengold)**

117.    Plaintiffs incorporate by reference in this count all allegations set forth above in paragraphs 1 through 74, and 85 through 94, 98 through 103, and 109 through 116.

118.    Defendant/Debtor has claimed as exempt certain assets that comprise the *res* of the Plaintiffs' constructive trust or property subject to Plaintiffs' equitable lien; specifically, the assets listed above in Paragraph 116(a), (c), (e), (f), and (k) have been claimed as exempt on schedule C of Defendant/Debtor's bankruptcy petition on the bases set forth therein.

119.    The Plaintiffs' Fund, which was obtained by Defendant/Debtor through fraud and egregious conduct, was used by Defendant/Debtor to invest in, purchase, or improve such assets claimed by Defendant/Debtor to be exempt, as well as the other assets of Defendant/Debtor or within his control that are described above in Paragraph 116.

120.    As a result of Defendant/Debtor fraudulent and egregious conduct, Plaintiffs are entitled to an equitable lien or constructive trust over all assets of Defendant/Debtor, to the extent such assets belong to Defendant/Debtor or are within his or the Trustee's control and comprise or may be traced to proceeds of Plaintiffs' Fund (including, without limitation, as the fund exists in any transformed state) and to whatever has been bought with, improved, paid for, received the benefit of, or enjoyed increased value as the result of Plaintiffs' Fund, regardless of whether such assets include those claimed to be exempt by Defendant/Debtor or anyone claiming by, with, or through him, including his dependents.

121.    When funds, which are obtained through fraud and egregious conduct, are used to invest in, purchase, or improve an asset, such asset is not exempt from a creditor's claim.  *See, Havoco of America, Ltd. v. Hill*, 790 So.2d 1018 (Fla.2001), incorporated in *Havoco of America, Ltd. v. Hill*, 255 F.3d 1321 (11th Cir.2001).

122.    It is immaterial whether Defendant/Debtor or anyone claiming by, with, or through him is innocent or lacked knowledge of the fraud committed by Defendant/Debtor in

order for an equitable lien or constructive trust to be imposed against any property alleged exempt by Defendant/Debtor.

123.    In addition, Defendant/Debtor employed means of changing or disposing of portions of the Plaintiffs' Fund with the intended purpose that such portions of the Plaintiffs' Fund become part of the assets claimed as exempt by Defendant/Debtor and allow Defendant/Debtor to retain possession thereof.  As such, those assets do not constitute exempt assets pursuant to §222.30, Florida Statutes.

**COUNT IX**
**DECLARATORY JUDGMENT**
**AS TO VALIDITY, PRIORITY OR EXTENT OF CONSTRUCTIVE TRUST**
**AND/OR EQUITABLE LIEN**
**(as to Moises Faidengold and the Trustee)**

124.    Plaintiffs incorporate by reference in this count all allegations set forth above in paragraphs 1 through 74, and 85 through 94, 98 through 103, and 109 through 116.

125.    The Constructive Trust Assets are held in constructive trust for the benefit of Plaintiffs.

126.    The constructive trust over the Constructive Trust Assets was created prior to the filing of Defendant/Debtor's chapter 7 petition.

127.    Plaintiffs' equitable interest in the Constructive Trust Assets is superior to any interest of the Defendant/Debtor and/or the Trustee.

128.    The Constructive Trust Assets do not form part of the Defendant/Debtor's bankruptcy estate.

129.    If Plaintiffs' interest in any Constructive Trust Asset is deemed not to be that of a beneficiary of a constructive trust, Plaintiffs are entitled to an equitable lien on such asset to the extent such asset was acquired or improved with, or otherwise benefitted from, proceeds of the

Plaintiffs' Fund, as the Plaintiffs' Fund was obtained by Defendant/Debtor by fraud or other reprehensible conduct.

130.    Plaintiffs demand that the Constructive Trust Assets be held without interference by the Defendant/Debtor or the Trustee.

131.    To the extent that the Defendant/Debtor or Trustee claims or holds in an interest in any Constructive Trust Assets, the Defendant/Debtor or Trustee is holding the Constructive Trust Assets in constructive trust, or subject to the equitable lien, for the benefit of Plaintiffs.

**COUNT X**
**RELIEF FROM AUTOMATIC STAY**

132.    Plaintiffs incorporate by reference in this count all allegations set forth above in paragraphs 1 through 74, and 85 through 94, 98 through 103, 109 through 116, and 124 through 131.

133.    The Constructive Trust Assets (as identified above in Paragraph 116) do not constitute property of the Defendant/Debtor's estate.

134.    Nonetheless, out of an abundance of caution, Plaintiffs seek relief from the stay to the extent necessary to pursue the relief requested in this complaint and to obtain possession of the Constructive Trust Assets.

135.    Because the Constructive Trust Assets belong to Plaintiffs and do not constitute property of Defendant/Debtor's estate, cause exists for relief from the stay to the extent such relief is required.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs DIANA ESCORIHUELA, MARIA NANCY DE ASCENCAO RODRIGUEZ, and FRANCISCO RODRIGUEZ request judgment in their favor as follows:

A.    That DIANA ESCORIHUELA recover from Defendant/Debtor MOISES FAIDENGOLD at least $900,000.00, as well as damages of emotional distress, and such additional damages as may be awarded in the Pending Litigation, plus interest, attorneys' fees, and costs.

B.    That MARIA NANCY DE ASCENCAO RODRIGUEZ recover from Defendant/Debtor MOISES FAIDENGOLD at least $343,600.00, as well as damages of emotional distress, plus interest, attorneys' fees, and costs.

C.    That FRANCISCO RODRIGUEZ recover from Defendant/Debtor MOISES FAIDENGOLD at least $100,000.00, plus interest, attorneys' fees, and costs.

D.    That Plaintiffs recover from Defendant/Debtor MOISES FAIDENGOLD treble damages, reasonable attorney's fees and court costs pursuant to §772.11, Florida Statutes.

E.    That Defendant/Debtor FAIDENGOLD provide an accounting of the use of the Plaintiffs' Fund, including without limitation such detail as will allow Plaintiffs to identify funds, property and other assets that may be subject to an equitable lien or constructive trust in favor of Plaintiffs.

F.    That an equitable lien or constructive trust be imposed on and cover in favor of Plaintiffs all assets of Defendant/Debtor, to the extent such assets belong to Defendant/Debtor or are within his or the Trustee's control and comprise or may be traced to proceeds of Plaintiffs' Fund (including, without limitation, as the fund exists in any transformed state) or to the proceeds of the Plaintiffs' Fund, including whatever has been bought with, improved, paid for, received the benefit of, or enjoyed increased value as the result of Plaintiffs' Fund, such as the assets or interests of Defendant/Debtor or the Trustee in the assets identified above in Paragraph 116.

23

G.      That the constructive trust and/or equitable lien in favor of the Plaintiffs takes priority over any interest of the Defendant/Debtor or the Trustee in the assets that form part of such constructive trust or that are subject to such equitable lien.

H.      That Plaintiffs, as the beneficiaries of the constructive trust, be given possession of the assets comprising the constructive trust or, if and to the extent appropriate, direct the Trustee to liquidate or sell the assets and to distribute the proceeds to the Plaintiffs to the extent they comprise the res of the constructive trust in favor of Plaintiffs.

I.      That the Trustee be directed to liquidate or sell the assets subject to an equitable lien in favor of Plaintiffs and to distribute the net proceeds to the Plaintiffs to the extent of such equitable lien.

J.      That all assets, damages, costs and expenses that Plaintiffs are entitled to recover in this action are non-dischargeable debts and obligations under 11 U.S.C. 523(a)(2)(A), §523(a)(4), and/or §523(a)(6);

K.      That the exemptions claimed by Defendant/Debtor MOISES FAIDENGOLD be disallowed to the extent of the equitable lien and/or constructive trust in favor of Plaintiffs; and

L.      That Plaintiffs be granted relief from the automatic stay, for cause, to the extent, if any, to pursue to the relief sought in this action.

M.      Granting such other and further relief as is just and appropriate under the circumstances.

Dated:  August 6, 2012.

Respectfully submitted,

**GONZALEZ & WERMUTH**
Attorney for Plaintiffs

8750 NW 36th Street, Suite 425
Miami, Florida 33178
Phone: (305) 715-7157
Fax: (305) 715-8982
E-Mail: michael@rgmwlaw.com


By: /s/ J. Michael Wermuth
    J. Michael Wermuth, Esq.
    Florida Bar No.:50768

# EXHIBIT A

## RE: NUEVO DEPOSITO

De:       **Moises Faidengold** (mfaidengold@med-group.us)
Enviado: miércoles, 21 de enero de 2009 14:33:59
Para:     MARIA NANCY DE ASCENCAO RODRIGUEZ (mariananancy68@hotmail.com)
CC:       diana escorihuela (descorihuela@hotmail.com)

Nancy/Diana,
En efecto el dia ayer entraron en caja los fondos de la transferencia que indico mas abajo.
Saludos
Moises

**De:** MARIA NANCY DE ASCENCAO RODRIGUEZ [mailto:mariananancy68@hotmail.com]
**Enviado el:** Sunday, January 18, 2009 9:46 PM
**Para:** Moises Faidengold
**Asunto:** FW: NUEVO DEPOSITO

---

From: mariananancy68@hotmail.com
To: mfaidengold@med-group.us
Subject: NUEVO DEPOSITO
Date: Thu, 15 Jan 2009 23:54:50 -0400

Sr. Moises.

Realizamos un deposito a su cuenta el viernes 16 de 100.000 dolares, distribuidos en dos partes de 50.000 para la cuenta de la Sra. Diana Escorihuela y 50.000 para la cuenta de María De Ascencao, mucho le agradecería nos avisara cuando le lleguen estos depósitos que estimamos deben estar en su cuenta el martes 20 DE ENERO, los mismos quisieramos lo colocara por seis meses al 8% que conversamos, de todas formas cuando pueda me llama a mi celular, saludos Nancy.

---

Get news, entertainment and everything you care about at Live.com. Check it out!

---

Explore the seven wonders of the world Learn more!

GLORIA NICHOLS
Certified by the American Translators Association
Certified by the U.S. Federal Court
Master Interpreter and Translator, NJ Court

1131 SW 102 Court                                           tel: 305-226-7734
Miami, FL 33174                                             fax: 305-675-6110

## AFFIDAVIT OF TRANSLATOR

I, Gloria Nichols, do hereby state that I am a competent Spanish to English
Certified Court Interpreter, so qualified upon written and oral examinations by the
Administrative Office of the U.S. Courts, and likewise Certified as a  translator upon
written examination in the above language combination by the American Translators
Association, my name being of record both at A.T.A. Headquarters in Alexandria,
Virginia and at the aforesaid Administrative Office of the U.S. Courts in Washington,
D.C., further meeting the requirements as a State of New Jersey Master Interpreter and
Translator, my name being registered with the Office of State Courts Administrator of the
State of New Jersey.

I further state that the attached Spanish into English translation of the foregoing
document is faithful and correct to the best of my knowledge, and was performed by me
to the best of my professional ability.

Gloria Nichols, Translator
U.S. Court Certification # 93-505
ATA # 31414

**STATE OF FLORIDA**          )
**COUNTY OF MIAMI-DADE**      )

Sworn to and subscribed before me by Gloria Nichols, known personally to me,
on this 6th day of January, 2012.

Notary Public State of Florida
John M Wermulh
My Commission EE070755
Expires 03/23/2015

Notary Public

RE: NEW DEPOSIT

From: Moises Faidengold (mfaidengold@med-group.us)
Sent: Wednesday, January 21, 2009 14:33:59
To:    MARIA NANCY DE ASCENCAO RODRIGUEZ (mariananacy68@hotmail.com)
CC:    Diana Escorihuela (descorihuela@hotmail.com)

Nancy/Diana,
In effect, yesterday the funds were received from the transfer indicated below.
Regards
Moises

From: MARIA NANCY DE ASCENCAO RODRIGUEZ (mail to: mariananacy68@hotmail.com)
Sent: Sunday, January 18, 2009, 9:46 p.m.
To: Moses Faidengold
Subject: FW: NEW DEPOSIT

From: mariananacy68@hotmail.com
To: mfaidengold@med-group.us
Subject: NEW DEPOSIT
Date: Thu, 15 Jan 2009 23:54:50 – 0400

Mr. Moises.

We made a deposit to your account on Friday the 16th for 100,000 dollars, divided into two parts of 50,000 for the account of Mrs. Diana Escorihuela and 50,000 for the account of María De Ascencao.  I would appreciate it very much if you would advise us when these deposits reach you; we estimate that they should be in your account on Tuesday, January 20.  We would like to place these funds for six months at the 8% that we discussed.  In any event, when you can, please call me on my cell phone. Regards, Nancy.

Get news, entertainment and everything you care about at Live.com.  Check it out!

Explore the seven wonders of the world.  Learn more!

**[THIS IS THE END OF THE TRANSLATION]**

# EXHIBIT B

# BARED & ASSOCIATES, P.A

### ATTORNEYS AND COUNSELORS AT LAW

1500 San Remo Avenue
Suite 248
Coral Gables, FL 33146
TELEPHONE (305) 666-6010 FAX (305) 666-2831
PBARED@BAREDLAW.COM

March 9, 2010

<u>Via Certified Mail</u>
<u>Return Receipt No.</u>
7008 1300 0000 7830 9031 &
Email mfaidengold@med-group.us

Moises Faidengold
c/o Med-Signs Medical Equipment Corp.,
7766 NW 46th Street
2nd Floor
Miami, Florida 33166

## DEMAND LETTER

Re:    Investment of Diana Escorihuela
       Our File Number 982

Dear Mr. Moises Faidengold:

Please be advised that the above referenced Law Firm represents the interest of Diana Escorihuela. In connection therewith Demand is hereby made that you immediately tender over the sum of $900,000.00 which you have failed and refused to pay over. Notwithstanding Demand by our client for same.

We understand that you procured the investment funds from our client and others similarly situated under your claim to invest said funds in securities in the U.S. with guaranteed 12%-14% return on her investment. Our initial research reveals that you are not a registered securities broker.

Your failure or refusal to immediately deliver a cashiers check for said amount to our law office will leave our client no alternative but to seek legal recourse in our Courts including but not limited to compensatory and punitive damages together with attorney fees and costs resulting from various causes of actions for damages sustained thereby.

PLEASE GOVERN YOURSELF ACCORDINGLY.
BARED & ASSOCIATES, P.A.
ATTORNEYS FOR DIANA ESCORIHUELA

Pablo R. Bared, Esq.
PRB/amg
cc: Diana Escorihuela

# EXHIBIT C



Capture Date: 03/19/2010 Sequence #: 6792731927



*Moises Faidengold*
*289 Landings Blvd.*
*Weston, FL 33327*

2722

03/17/2010
Date

Pay to the Order of Lamont Neiman Interian & Bellet, P.A     $ -2,000.00-

Two thousands —     Dollars

**Bank of America**

U.S. Trust, Bank of America
Private Wealth Management

For fee retainer

PAY TO THE ORDER OF
CITY NATIONAL BANK OF FLORIDA
MIAMI, FLORIDA
FOR DEPOSIT ONLY
LAMONT NEIMAN INTERIAN & BELLET, P.A.
OPERATING ACCOUNT

Electronic Endorsements
| Date | Sequence | Bank # | BOFD | TRN | BankName |
|------|----------|--------|------|-----|----------|
| 03/19/2010 | 013040100 | 867 | Y | Y | CITY NATIONAL BANK O |
| 03/19/2010 | 006792731927 | 2822 | N | N | BANK OF AMERICA, NA |
| 03/22/2010 | 6618997760 | 146 | N | N | FEDERAL RES BANK OF |

No Payee Endorsements Found

EXHIBIT D

```
 1          marked as Plaintiff's Exhibit 15.

 2          A     Okay.

 3          Q     Had you recognized Plaintiff's Exhibit 15?

 4          A     I see it's a check.

 5          Q     A check to Lamonte, Neiman, Interior and

 6     Bellet?

 7          A     Yes.

 8          Q     Do you know who that is?

 9          A     That's an attorney firm.

10          Q     All right.  Did you go to see that firm on or

11     about March 17th, 2010?

12          A     Around that time, yes.

13          Q     Why did you go to see that firm about that

14     time?

15          A     My husband received a letter.  I can give you

16     the same letter that we spoke about before.  And he

17     asked me --

18          Q     Plaintiff's Exhibit No. 1?

19          A     Yes.

20          Q     Okay.  From Mr. Bared, the demand letter?

21          A     Yes.  And this is the attorney he went to

22     visit and he asked me to go with him.

23          Q     So, you went and met with these attorneys?

24          A     Yes.

25          Q     And that was on or about March 17th, 2010?
```

1            A     No.  It was probably before then.

2                        (Thereupon, Exhibit 16 was entered

3                        into the record.)

4            Q     (By Mr. Wermuth) I'm showing you what's been

5      marked as Plaintiff's Exhibit 16.

6            A     Okay.

7            Q     Do you recognize Plaintiff's Exhibit 16?

8            A     Yes.

9            Q     Okay.  What is it?

10           A     It's the -- the limited -- Double M

11     Management, LLC.

12           Q     Did the attorneys that you went to see -- and

13     we just saw the check for it -- is that, Lamonte,

14     Neiman, they were the ones that formed this company,

15     that's shown in Plaintiff's 16?

16           A     Yes.

17           Q     All right.  And this -- as shown in

18     Plaintiff's 16, the name of the company is Double M

19     Management, LLC?

20           A     Yes.

21           Q     Are you the owner of Double M Management, LLC?

22           A     I'm the only partner.

23           Q     Okay.  Are you the only person involved in

24     Double M Management, LLC?

25           A     Yes.  From what I understand, yes.

57

1        Q    So, you're the only owner?

2        A    I'm the only partner in this company.

3        Q    When you say "partner" --

4        A    I'm the manager.

5        Q    When you say "partner", you mean the only one

6    that owns this company?

7        A    To my understanding.  I'm not a -- an expert.

8        Q    What's the purpose of this company?

9        A    The company was created based on the advice of

10   Mr. Neiman for estate planning purposes.

11       Q    When did you decide that you wanted to start

12   with estate planning?

13       A    My husband started about -- probably two years

14   prior to that -- to that visit.

15       Q    But I understand, this company, as shown on

16   Plaintiff's Exhibit 16, is just for you, correct?

17       A    This?  Yes.

18       Q    And it was formed on March 25th, 2010?

19       A    And that's what it says here, yes.

20       Q    So, you went to see Lamonte Neiman a little

21   bit before that on March of 2010 and then you formed

22   this company, Double M Management, LLC?

23       A    He did it -- he did it as part of the estate

24   planning.

25       Q    And Double M Management, LLC is still active?

```
 1          A    Yes, sir.

 2                         (Thereupon, Exhibit 17 was entered

 3                         into the record.)

 4          Q    (By Mr. Wermuth) I'm showing you what's been

 5     marked as Plaintiff's Exhibit 17.  Do you recognize --

 6               MR. MARTINEZ:  Do you have a copy?

 7               MR. WERMUTH:  Oh, sorry.  That's what happened.

 8          I was thinking why I had an extra copy.

 9          A    Yes.

10          Q    (By Mr. Wermuth) What is it?

11          A    This is the annual report that is done once a

12     year.

13          Q    For Double M Management, LLC.

14          A    Yes.

15          Q    Did you file it?

16          A    Yes.

17                         (Thereupon Exhibit 18 was entered

18                         into the record.)

19          Q    (By Mr. Wermuth) I'm handing you what's been

20     marked as plaintiff's Exhibit 18.

21          A    Okay.

22          Q    Do you recognize it?

23          A    Yes.

24          Q    And what is it?

25          A    This is the -- the form or the bank account
```

# EXHIBIT E

1         **Q**   **Okay.  Did you feel like it was part of your**

2    **duty to try to make sure that Mary Faidengold understood**

3    **what you were trying to do and why?**

4        A   Again, I don't remember the specifics, but I

5    could tell you that would be something which would be a

6    normal course of, you know, meeting with a client, is

7    to explain what it is and why.

8         **Q**   **Okay.  Do you recall whether a demand letter**

9    **that had been received by the Faidengolds was discussed**

10    **during your meeting?**

11        A   I don't recall if it was received by the

12    Faidengolds or by Moises, but there was a letter which

13    was discussed.

14         **Q**   **Okay.  I can tell you because I deposed Mary**

15    **Faidengold that she, in fact, testified that she had**

16    **seen the demand letter from Mr. Bared.**

17            THE COURT REPORTER:  Can you spell that?

18            MR. WERMUTH:  B-A-R-E-D.  All right.  Go ahead

19      and mark this as an exhibit.

20            THE COURT REPORTER:  One.

21                (Thereupon, Plaintiff's Exhibit 1

22                was entered into the record.)

23         **Q**   **(By Mr. Wermuth) I'm showing you what's been**

24    **marked as Plaintiff's Exhibit No. 1.  Do you recall**

25    **having seen Plaintiff's Exhibit No. 1, the demand**

1     letter?

2          A    I don't remember the letter -- if this is the

3     letter but I remember the subject matter, so yes.

4          Q    Okay.  And that was discussed during that

5     meeting in March of 2010?

6          A    Yes.

7          Q    Do you recall what Mary -- what, if anything,

8     Mary told you?

9          A    I did not recall -- I do not recall if she spoke

10    about it even.

11         Q    But it was discussed during the meeting?

12         A    It was discussed primarily with Moises, yes.

13         Q    In her presence, in Ms. --

14         A    Yes.

15         Q    -- Mary Faidengold's presence?

16         A    Yes.

17         Q    All right.  Was this what's referenced in this

18    demand letter, this claim about an investment scheme,

19    the reason you recommended the family limited

20    partnership?

21         A    It was a consideration but there are other

22    reasons for recommending it.

23         Q    Okay.  What other reasons, if any, did you

24    have for recommending the family limited partnership to

25    the Faidengolds?

1        A     Just part of the estate planning so they

2   can -- just part of the overall estate planning.

3        **Q     The -- what were the factors that you took**

4   **into account in structuring the family limited**

5   **partnership.**

6        A     I really don't even recall.  I -- again, much

7   of it is boilerplates, so I don't -- I don't recall

8   specifically, you know, what was unique to them.

9        **Q     If there's a husband and wife, is it standard**

10  **to have -- appoint one, either the spouse or whichever**

11  **spouse, husband or wife, as a sole representative of the**

12  **family limited partnership as opposed to both spouses**

13  **having --**

14          MR. MARTINEZ:  Object to form.  Go ahead and

15       answer if you can.

16       **Q     (By Mr. Wermuth) -- capacity?**

17       A     Okay.  Again, I don't recall the exact

18  circumstances, but as -- and I don't recall the age of

19  their children.  There's a general rule it's customary

20  that, if -- if possible, neither husband or wife are the

21  managers of the entity.  Generally prefer it to be a

22  child or someone but I don't -- my recollection might be

23  that their children are too young.

24       **Q     Okay.  Why don't you take a took at your files**

25  **here and refresh your memory as to what structure you**

1    **partnership was because you had seen this or -- this**

2    **demand letter that's Exhibit 1 and discussed it with the**

3    **Faidengolds.**

4             MR. MARTINEZ:  Objection.  Mischaracterizes

5         his testimony.  I think he said part of the

6         situation.

7         A    Yeah.  I would recommend the limited

8    partnership to every client.  You know, it's not every

9    client who wants to spend any additional funds to do it,

10   but I think it's a valid estate planning vehicle really

11   for everyone, for both estate tax purposes, protection

12   purposes, gift tax purposes, whatever.  So, you know,

13   I'm sure -- I shouldn't say I'm sure, but I would

14   speculate that I probably recommended it when I first met

15   Moises, you know, because it's something I would discuss

16   with -- with most every client.

17        **Q    Well, in this case, when the Faidengolds**

18   **showed up for their appointment with you of -- on or**

19   **about March 14th, 2010, was this demand letter one of**

20   **the first things that was brought up?**

21        A    I don't recall if it was or was not.

22        **Q    Now, after having seen the demand letter**

23   **during the meeting and discussed it and recommending the**

24   **family limited partnership, would there have been a**

25   **reason why -- other than the reasons you've mentioned**

1       with respect to the organizational structure of the

2       family limited partnership suggested that Mary

3       Faidengold be the person to act on behalf of the family

4       limited partnership to avoid having whatever assets that

5       are in the name of this family limited partnership subject

6       to claims against Moises?

7            A    Yeah.  I don't think that was -- it was ever

8       discussed that if she was the manager that the assets

9       wouldn't be subject to -- would or would not be subject

10      to claims.  I don't think that was ever discussed.

11           Q    Were the risks of that happening discussed at

12      all?

13           A    I don't recall.

14           Q    Is that something you normally discuss with a

15      client -- the risks about even though you've set -- a

16      client may have set up a -- an asset protection vehicle

17      such as the family limited partnership and it doesn't

18      mean that those assets would be necessarily 100%

19      protected?

20                MR. MARTINEZ:  Objection to form.

21           A    Okay.  Let me -- yeah -- put it this way.  I

22      wouldn't call it an asset protection vehicle because

23      there are multiple other reasons to create it, but I'm

24      a lawyer just like you.  Of course, I tell somebody that

25      when I'm doing something, there are always risks that

1    someone couldn't -- you know, a Court can reinterpret

2    something or rule on something differently.

3         Q    (By Mr. Wermuth) I'm asking because -- again,

4    my questioning today has to do with Mary.

5         A    Yes.

6         Q    You know, I don't want to get involved with

7    Moises.  And she was present.  I need to understand what

8    was discussed during this meeting.  Why was it

9    discussed?  What was the basis for after having done the

10   standard package of a estate planning, we have a vehicle

11   or -- and it's the -- such as a limited liability

12   partnership.  That's the reasons for these questions.

13        A    Okay.  You know, I can't -- you know, I can't

14   speculate.  It would only be a speculation as to why would --

15   why someone would want to do something, you know.

16        Q    Well, you're receiving input from your clients

17   and you were making a recommendation based on the input.

18   You had seen a demand letter dated March 9th, 2010,

19   which is Exhibit 1, and within a few days, the

20   Faidengolds are in your office --

21        A    Right.

22        Q    -- and there's a discussion about -- or at

23   least the recommendation came about of this family

24   limited partnership?

25        A    We -- you know, obviously, it was discussed in

1    the context of the letter but -- again, it was discussed

2    in generalities and as to other -- other benefits of

3    creating the structure.

4        Q    Do you know why you were designated as a

5    witness -- a trial witness in the case against Moises

6    and Mary Faidengold?

7        A    No.

8        Q    Okay.  Did you know that you are designated as

9    a witness -- trial witness?

10       A    I got your subpoena.

11       Q    Okay.  How about the assets of the family

12   limited partnership, were they ever discussed during

13   your meeting?

14       A    I'm sure they were.

15       Q    Okay.  What is your normal course of business

16   or -- you know, with respect to recommendations

17   regarding assets or funding a limited family

18   partnership?

19       A    Generally, my recommendation is to transfer

20   all assets except for certain types of assets such as

21   Homestead, IRA, Subchapter S corporation stock.

22       Q    Well, did the Faidengolds ever end up signing

23   that will, the revocable trust, the durable powers, the

24   health care surrogates and living will?

25       A    I don't recall.  I don't recall.

# EXHIBIT F

JOB # ████699

April 5, 2010

I, Mary Faidengold, authorized agent for Double M. Management LLC authorized the acceptance of the Margin debit balance ($419619.44) from account ████197 to be transferred to account #████754.

If you should need additional information, please contact me at 305.803.7003.

Thank you,

X_____

Mary Faidengold, authorized agent for Double M. Management LLC

# EXHIBIT G

## Pagos de Octubre

De:      **Moises Faidengold** (mfaidengold@med-group.us)
Enviado: viernes, 24 de octubre de 2008 15:23:03
Para:    diana escorihuela (descorihuela@hotmail.com)

Hola Diana,

Te informo que el dia martes 28 de Octubre se realizaran pagos correspondientes al mes de Octubre de la siguiente manera:

Hay una prorata de 5 dias por $ 19,650.00 a razón de 6.55 diario que totalizan 32.75 correspondien a la transferencia que entro el dia 25 de Septiembre. Este monto no estaba contabilizado en el momento del pago del mes anterior (Sep 2008)

Hay otra prorata por 17 dias por $ 55,000.00 a razón de 18.33 diario que totalizan 311.67 por el cheque que fue ingresado en cuenta el dia 14 de Octubre.

La suma de estos dos cheques se depositara en la cuenta de Diana en Bank United.

Por otro lado, lo correspondiente al mes de Octubre es:

2,500.00 a la cuenta de la hipoteca, (con los mil adiconales para cubrir el mes adelantado)

500.00 a la cuenta de Diamond International (restando los mil que se depositaran en la cuenta de la hipoteca)

1946.50 a la cuenta de Diana Escorihuela.

Esto es el total de 494,650.00 (esto es: 475,000.00 mas 19,950.00 = 494,650.00)

A partir del mes de Noviembre, ya los depósitos se harán sin prorata, ya que los montos están ya todos enterados en las cuentas. Solo falta que em entregeues en efectivos los 350.00 la semana próxima.

Saludos

Moises

GLORIA NICHOLS
Certified by the American Translators Association
Certified by the U.S. Federal Court
Master Interpreter and Translator, NJ Court

1131 SW 102 Court
Miami, FL 33174

tel: 305-226-7734
fax: 305-675-6110

## AFFIDAVIT OF TRANSLATOR

I, Gloria Nichols, do hereby state that I am a competent Spanish to English Certified Court Interpreter, so qualified upon written and oral examinations by the Administrative Office of the U.S. Courts, and likewise Certified as a translator upon written examination in the above language combination by the American Translators Association, my name being of record both at A.T.A. Headquarters in Alexandria, Virginia and at the aforesaid Administrative Office of the U.S. Courts in Washington, D.C., further meeting the requirements as a State of New Jersey Master Interpreter and Translator, my name being registered with the Office of State Courts Administrator of the State of New Jersey.

I further state that the attached Spanish into English translation of the foregoing document is faithful and correct to the best of my knowledge, and was performed by me to the best of my professional ability.

Gloria Nichols, Translator
U.S. Court Certification # 93-505
ATA # 31414

**STATE OF FLORIDA**          )
**COUNTY OF MIAMI-DADE**    )

Sworn to and subscribed before me by Gloria Nichols, known personally to me, on this 6th day of January, 2012.

Notary Public

Notary Public State of Florida
John M Wermuth
My Commission EE070755
Expires 03/23/2015

Payments for October

From: Moises Faidengold (mfaidengold@med-group.us)
Sent: Friday, October 24, 2008 15:23:03
To: Diana Escorihuela (descorihuela@hotmail.com)

Hi, Diana,

This is to inform you that on Tuesday, October 28, payments corresponding to the month of October were made as follows:

Pro-rating for 5 days for $19,650.00 at a rate of 6.55 per day, for a total of 32.75 corresponding to the transfer that came in on September 25.  This amount had not yet been entered into the accounting at the time of payment for the previous month (Sept. 2008).

Another pro-rating for 17 days for $55,000.00 at a rate of 18.33 per day, for a total of 311.67 for the check that was deposited in the account on October 14.

The sum of these two checks will be deposited in Diana's account at Bank United.

Also, the following is for the month of October:

2,500 to the mortgage account (along with the additional thousand in order to cover the month in advance)

500.00 to the Diamond International account (subtracting the thousand that will be deposited in the mortgage account)

1946.50 to the account of Diana Escorihuela

--This is the total of 494,659.00 (in other words: 475,000.00 plus 19,950.00 = 494.650.00)

Starting in November, the deposits will be made without pro-rating, since the amounts already are all deposited in the accounts.  The only thing that needs to be done is for you to give me the 350.00 in cash next week.

Regards,

Moises

**[THIS IS THE END OF THE TRANSLATION]**

## RV: RV: Deposito Junio

De:      Moises Faidengold (mfaidengold@med-group.us)
Enviado: martes, 30 de junio de 2009 01:54:52 p.m.
Para:    MARIA NANCY DE ASCENCAO RODRIGUEZ (mariananci68@hotmail.com)

Hola Nancy,

Por medio de la presente te informo del depósito hecho a tu cuenta el día de hoy
correspondiente al mes de Junio 2009.

El monto fue total de  $ 2410.00, que conforman dos depósitos uno de $ 2075.00 mas $ 335.00

Por otro lado, en efecto la colocación vence el día 31 de Julio según me indico en su email
anterior, por lo que los fondos solicitados por Ud. estarán a su disposición.

Favor revisar y confirmar.

Saludos

Moises Faidengold

GLORIA NICHOLS
Certified by the American Translators Association
Certified by the U.S. Federal Court
Master Interpreter and Translator, NJ Court

1131 SW 102 Court
Miami, FL 33174

tel: 305-226-7734
fax: 305-675-6110

## AFFIDAVIT OF TRANSLATOR

I, Gloria Nichols, do hereby state that I am a competent Spanish to English Certified Court Interpreter, so qualified upon written and oral examinations by the Administrative Office of the U.S. Courts, and likewise Certified as a translator upon written examination in the above language combination by the American Translators Association, my name being of record both at A.T.A. Headquarters in Alexandria, Virginia and at the aforesaid Administrative Office of the U.S. Courts in Washington, D.C., further meeting the requirements as a State of New Jersey Master Interpreter and Translator, my name being registered with the Office of State Courts Administrator of the State of New Jersey.

I further state that the attached Spanish into English translation of the foregoing document is faithful and correct to the best of my knowledge, and was performed by me to the best of my professional ability.

Gloria Nichols, Translator
U.S. Court Certification # 93-505
ATA # 31414

**STATE OF FLORIDA**              )
**COUNTY OF MIAMI-DADE**      )

Sworn to and subscribed before me by Gloria Nichols, known personally to me, on this 6th day of January, 2012.

Notary Public State of Florida
John M Wermuth
My Commission EE070755
Expires 03/23/2015

Notary Public

FW: FW: June Deposit

From: Moises Faidengold (mfaidengold@med-group.us)
Sent: Tuesday, June 30, 2009 01:54:52
To:    MARIA NANCY DE ASCENCAO RODRIGUEZ (mariananancy68@hotmail.com)

Hi Nancy,

This message is to inform you of the deposit made to your account today, corresponding to the month of June, 2009.

The amount was for a total of $2,410.00 consisting of two deposits, one for $2,075.00 and another for $335.00.

Also, the placement will end on July 31 according to what you indicated in your previous e-mail, and therefore the funds you requested will be at your disposal.

Kindly review and confirm.

Greetings,

Moises Faidengold

**[THIS IS THE END OF THE TRANSLATION]**

# EXHIBIT H

Page 1 of 1

## Re: infoemacion

De:     **Moises Faidengold** (mfaidengold@med-group.us)
Enviado: jueves, 19 de junio de 2008 17:23:07
Para:   diana escorihuela (descorihuela@hotmail.com)

OK, recibido.
Gracias
Moises Faidengold

On 6/19/08 1:15 PM, "diana escorihuela" <descorihuela@hotmail.com> wrote:

Hola moises por medio de este mail, te informo que con mi dinero que tu manejas, que para la
fecha de hoy, son 400 mil dolares, quiero que se depositen de la siguiente forma, 1500 dolares mensuales en la cuenta de
bank united que tu ya usas, para pagar intereses y abono de capital de mi apto en doral
florida.y los otros 2500 dolares que corresponden mensuales de intereses son para depositar de
la siguiente forma 500 dolares en la cta de bank united a nombre de diamond internacional
777, inc. N=▮▮▮▮▮574
y 2000 dolares, mensuales, en la cta de bank united a mi nombre DIANA ESCORIHUELA N=
▮▮▮▮495 .
y el regalito porcentual, por el manejo exitoso de estos dineros lo acordamos al vencer los 6
meses, en que cuenta depositaras, por fa enviame confirmacion de recibido este mail, y el papel
de compromiso con las fechas y montos precisos, muchas gracias...DIANA ESCORIHUELA  CI
▮▮▮▮361, VENEZOLANA TELEFONO 0416 6 075475...CARACAS VENEZUELA.

Sigue de cerca las últimas tendencias y lo que más rompe MSN Vídeo
<http://video.msn.com/video.aspx?mkt=es-es>

GLORIA NICHOLS
Certified by the American Translators Association
Certified by the U.S. Federal Court
Master Interpreter and Translator, NJ Court

1131 SW 102 Court                                                    tel: 305-226-7734
Miami, FL 33174                                                      fax: 305-675-6110

## AFFIDAVIT OF TRANSLATOR

I, Gloria Nichols, do hereby state that I am a competent Spanish to English Certified Court Interpreter, so qualified upon written and oral examinations by the Administrative Office of the U.S. Courts, and likewise Certified as a translator upon written examination in the above language combination by the American Translators Association, my name being of record both at A.T.A. Headquarters in Alexandria, Virginia and at the aforesaid Administrative Office of the U.S. Courts in Washington, D.C., further meeting the requirements as a State of New Jersey Master Interpreter and Translator, my name being registered with the Office of State Courts Administrator of the State of New Jersey.

I further state that the attached Spanish into English translation of the foregoing document is faithful and correct to the best of my knowledge, and was performed by me to the best of my professional ability.

Gloria Nichols, Translator
U.S. Court Certification # 93-505
ATA # 31414

**STATE OF FLORIDA**              )
**COUNTY OF MIAMI-DADE**          )

Sworn to and subscribed before me by Gloria Nichols, known personally to me, on this 6th day of January, 2012.

Notary Public State of Florida
John M Wermuth
My Commission EE070755
Expires 03/23/2015

Notary Public

Re: information

From: Moises Faidengold (mfaidengold@med-group.us)
Sent: Thursday, June 19, 2008 17:23:07
To:    Diana Escorihuela (descorihuela@hotmail.com)

OK, received.
Thank you.
Moises Faidengold


On 6/19/08  1:15 p.m., Diana Escorihuela descorihuela@hjotmail.com wrote:

Hi, Moises.  I am hereby informing you that with my money that you manage, which as of today's date is
400 thousand dollars, I want the interests agreed to by us to be deposited monthly in the following
manner:  1,500 dollars monthly in the account at Bank United that you are already using, to pay interest
and principal on my apartment in Doral, Florida, and the other 2,500 dollars that accrue each month in
interest are to be placed as follows: 500 dollars in the Bank United account in the name of Diamond
International 777, Inc. No. ███████574, and 2000 dollars monthly in the Bank United account in my
name, Diana Escorihuela, No. ███████495.  And the agreed small percentage gift for the successful
management of those funds upon the expiration of 6 months, in which account you will deposit it?
Please send me confirmation of having received this e-mail, and the commitment letter with the exact
dates and amounts, thank you very much …DIANA ESCORIHUELA, Venezuelan Identity card No.
███████361, Telephone 0416 6 075471…Caracas, Venezuela.

Follow from up close the breaking and latest trends on MSN Video
<http://video.msn.com/video.aspx?mkt+es-es>

[THIS IS THE END OF THE TRANSLATION]